# In the United States Court of Federal Claims

**No. 18-963C**
**Filed: September 24, 2018**
**Redacted Version Issued for Publication: October 22, 2018[1]**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| **AMERICAN RELOCATION CONNECTIONS, L.L.C.,** | \* \* \* |
| **Protestor,** | \* |
| **v.** | \* |
| **UNITED STATES,** | \* \* \* |
| **Defendant.** | \* |

Pre-Award Bid Protest; Cross-Motions for Judgment on the Administrative Record; Acquisition Planning; Market Research; 13 C.F.R. § 125.2; Federal Supply Schedule; NAICS Codes.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Bret S. Wacker**, Clark Hill PLC, Detroit, MI. Of counsel was **Emily Baldwin**, Clark Hill PLC, Detroit, MI, and **W. Barron A. Avery** and **William B. O'Reilly**, Baker Hostetler, Washington, D.C.

**Margaret J. Jantzen**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Steven J. Gillingham**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General. Of counsel was **Kimberly L. Cohen**, Attorney, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, Indianapolis, IN.

## O P I N I O N

<u>**HORN, J.**</u>

In the above-captioned bid protest, American Relocation Connections, L.L.C. (ARC) asserts that the United States Customs and Border Protection (CBP) violated federal procurement law, including the Federal Acquisition Regulation (FAR) and regulations promulgated by the Small Business Administration (SBA), when it issued an

---

[1] This opinion was issued under seal on September 24, 2018. The parties were asked to propose redactions prior to public release of the opinion. Protestor responded that protestor "proposes no redactions to the Court's September 24, 2018 Opinion," and defendant proposed to redact information defendant identified as "government cost estimates" and "offeror information." This opinion is issued with all of the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the notation: "[redacted]."

unrestricted solicitation requesting employee relocation services under the Federal Supply Schedule (FSS) program, allegedly without engaging in any acquisition planning or conducting any market research.

**FINDINGS OF FACT**

According to ARC's complaint, "ARC is a nationally recognized small business that is an industry leader in government and commercial sectors for the provision of employee relocation and related services." On April 1, 2014, CBP awarded ARC Order No. HSBP1014A00027 under Contract No. GS-33F-0054V (the ARC Contract), which was set aside for small businesses. The ARC Contract had a base period of performance beginning on April 1, 2014 and ending on September 30, 2014. The ARC Contract contained three one-year option periods of performance, all of which were exercised by the CBP. Subsequently, CBP and ARC executed three bilateral modifications extending ARC's period of performance under the ARC Contract to July 31, 2018. Under the ARC Contract, ARC was to provide professional relocation services "in order to facilitate the real estate transactions and household goods moving services" of the approximately 1,000 CBP employees who CBP relocates on an annual basis. The parties have stipulated that the ARC Contract "requested services listed under GSA [General Services Administration] Federal Supply Schedule[2] 48, SINS [Special Item Numbers] 653-1, 653-4, 653-5 and 653-7," as defined below. ARC asserts that it "has received consistently high accolades for its performance under the Existing Contract."

On March 30, 2017, Joe Ohene, a Contract Specialist with CBP, sent an email message to Thomas Ischkum, a Branch Chief at the GSA, indicating that CBP planned "to use GSA Schedule 48 Transportation, Delivery, and Relocation Solutions for the recompete. It was used successfully for the last acquisition." On May 8, 2018, the CBP posted a Request for Information for employee relocation services. In response to questions received by CBP regarding CBP's May 8, 2018 Request for Information, CBP indicated that, for its upcoming acquisition of employee relocation services, the North American Industry Classification System (NAICS) Code "to be utilized is 484210," which has a small business size standard of $27,500,000.00.

The CBP subsequently created an Acquisition Plan, which was dated June 19, 2017, addressing the requirements and potential risks associated with CBP's upcoming acquisition of employee relocation services. The CBP's June 19, 2017 Acquisition Plan indicates that it was prepared by Iris Reeves, Lead Staff Accountant and Contracting

---

[2] "The Federal Supply Schedule program is also known as the GSA Schedules Program or the Multiple Award Schedule Program." FAR § 8.402(a) (2018).  The FSS is "directed and managed by GSA and provides Federal agencies (see [FAR §] 8.004 [(2018)]) with a simplified process for obtaining commercial supplies and services at prices associated with volume buying." FAR § 8.402(a). "A GSA Schedule is a list of product and service items and of indefinite-delivery indefinite-quantity contracts for a particular class of products or services against which agencies may issue task and delivery orders." JOHN CIBINIC, JR. ET AL., FORMATION OF GOVERNMENT CONTRACTS 1144 (4th ed. 2011).

Officer Representative at the CBP, Francine Harris, Contracting Officer and Branch Chief at the CBP, Herman Shivers, Lead Small Business Specialist at the CBP, Phillip Landfried, Chief Information Officer at the CBP, and CBP Contract Specialist Joe Ohene. The CBP's June 19, 2017 Acquisition Plan provided the following description of CBP's requirements:

> The Employee Relocation Program was established to provide enhanced benefits to relocating employees and thus facilitate the retention of well-qualified employees. The program provides relocation assistance to help employees plan and complete moves to their new duty stations as quickly and smoothly as possible.

> CBP requires an experienced and dedicated professional relocation services provider in order to facilitate the real estate transactions and household goods moving services for transferring employees. Counseling is provided throughout the process for selling, renting of old homes and acquisition of new homes. The Contractor arranges for the household goods to be packed, shipped and unpacked. In some cases, vehicles and/or temporary support goods are shipped. Services may be provided to sell or rent out the old home and to procure a new one.

> This requirement fulfills the following critical gaps; CBP does not have the in-house ability to support any of the functions that will be obtained through this contract. Forcing personnel to make their own moving arrangements would place undue burdens on them and their families creating discontent and putting CBP at risk of losing quality employees. The contract to be awarded provides relocation assistance to help employees plan and complete their moves to new duty stations: afford eligible transferring employees with access to relocation services: balance the effects that availability of relocation services has on employee mobility and morale by providing qualified home sale and move management services: provides guidance and options for employees to take measures to assist in expediting the home sale process.

> As stated, CBP does not have the human resources and personnel to conduct the operational activities associated with relocation services such as moving and shipping employees' household goods. A Government in-[sic] house effort is therefore not a feasible acquisition alternative. Further, using other agencies [sic] relocation contracts through a vehicle such as an Interagency Agreement is also not a feasible acquisition alternative as CBP employees may have relocation needs or requirements that may differ significantly from other agencies' employees relocating requirements.

> With respect to the acquisition history, a relocation services contract was awarded in 2014. This is the current contract, which expires in FY17. Prior to this contract, another relocation contract was awarded in April 2008 and

expired in May 2014. CBP received satisfactory services under both contracts. As a result of these prior acquisitions and the satisfactory services received the [sic] resultant contracts, there is no need to pursue other acquisition alternatives.

The CBP's June 19, 2017 Acquisition Plan also states that:

CBP experienced some degree of performance constraint on the move management aspect of the current contract, specifically pertaining to goods of some CBP employees being damaged during transit resulting in unpaid claims to the said employees. Language is being included on the new contract to mitigate issues pertaining to the move management service.

The CBP's June 19, 2017 Acquisition Plan states that "the acquisition will be competed via GSA Relocation Services schedule holders," specifically "GSA Schedule 48- Transportation, Delivery and Relocation Solutions," and that small business vendors "will be utilized for this acquisition." According to the June 19, 2017 Acquisition Plan, "[b]ased on a review of GSA Schedule 48, 5 proposals submissions from small business companies are anticipated in response to the Request for Quotation." The CBP's June 19, 2017 Acquisition Plan identified five Special Item Numbers (SINs) that the CBP anticipated obtaining under a future acquisition: SIN 653-1, "Relocation Service Package;" SIN 653-3, "Relocation Software, Technology Tools, and Services;" SIN 653-4, "Additional Services;" SIN 653-5, "Agency Customization Service;" and SIN 653-7, "Move Management Services."[3] According to defendant, "[e]ach GSA schedule is comprised of SINs. This is a categorization method that groups together similar products, services, and solution to aid in the acquisition process." (citing FAR § 8.401 (2018)). In the parties' joint statement of stipulated facts, the parties state:

SIN 653-1 is for "Relocation Service Package," which includes home sale services to ensure the employee's home will be sold, including assistance in marketing the home, negotiating with potential outside buyers, helping the employee become familiar with their new duty location, providing renter/buyer assistance, spousal and mortgage counseling and reports.

SIN 653-4 is for "Additional Services," which includes extra services available such as Cost of Living Analysis, Closing Assistance, Expense Management, Rental Management, Entitlement Counseling, Group Move Assistance and International Move Assistance, Property Management and Training.

SIN 653-5 is for "Agency Customization Services," which includes handling property that is not eligible for the home sale services including special

---

[3] Although the CBP's June 19, 2017 Acquisition Plan indicated that CBP anticipated that it would be requesting services under SIN 653-3, the 2017 RFQ did not request services under SIN 653-3.

property that is difficult to sell. Also included are special home sale and marketing assistance, and international services involving acclimating the family to the new area.

SIN 653-7 is for "Move Management Services," which includes a total package of move management services including transferee entitlement and pre-move counseling; carrier selection; preparation of bills of lading; shipment booking; service performance and prepayment audits; claims preparation assistance; and on-site quality control.

(internal references omitted).

The June 19, 2017 Acquisition Plan states that a "small business set-aside[4] is contemplated given the sizable number of small business vendors found under GSA Schedule 48 that show the capability to provide employee relocation services." The June 19, 2017 Acquisition Plan indicates that the CBP anticipates awarding a firm-fixed price contract with a base period of performance of one year and with four one-year option periods of performance. If all option periods were to be exercised, the Acquisition Plan indicates the "Total Value" of the resulting contract would be [redacted].

On August 21, 2017, the CBP issued Request for Quotation (RFQ) No. HSBP1017Q0046 (the 2017 RFQ) for employee relocation services under GSA's "Relocation Services Schedule 48 SSIN 653." The 2017 RFQ indicated that the underlying procurement was set aside for small businesses. On August 22, 2017, the CBP issued Amendment No. A0001 to the 2017 RFQ, which indicated that SIN 653-1, Relocation Service Package, SIN 653-4, Additional Services, SIN 653-5, Agency Customization Services, and SIN 653-7, Move Management Services, were the SINS applicable to the 2017 RFQ. The 2017 RFQ stated:

For Move Management service, apart from showing data that it has the technical capability to provide this service, the offeror shall also include a carrier evaluation plan as part of its submission. The carrier evaluation plan must show how the offeror evaluates the carrier's performance in terms of meeting required delivery dates, professionalism of personnel, ability to provide timely reports and information.

Attachment 2 to the 2017 RFQ, which was titled "Price Sheet," provided two hypothetical scenarios and tables containing line items with estimated quantities. For each line item in the CBP's Price Sheet, offerors were to provide a unit price. Offerors were to address the hypothetical scenarios and complete the tables "for the purpose of the price competition comparison with other vendors."

---

[4] "A 'set-aside for small business' is the reserving of an acquisition exclusively for participation by small business concerns." FAR § 19.501(a) (2018).

On August 23, 2017, Terri Shaffer, a GSA Program Analyst, sent an email message to CBP contracting personnel stating:

> I understand that your agency issued an RFQ for relocation services. It looks like the solicitation refers to an earlier version of the 653-7 SOW [Statement of Work] that included commercial pricing as an option for move management services. The recent change to the Schedule which is reflected in the attached process maps offers move management services through the Schedule in combination with the household goods moving services being managed under the terms, conditions, and pricing of the Centralized Household Goods Traffic Management Program (CHAMP).
>
> Would you have an opportunity to discuss today? I can further explain the purpose of the change.

On August 24, 2017, the CBP issued a modification to the 2017 RFQ postponing the submission deadline for offers under the 2017 RFQ and stating that "OFFERORS SHOULD CONTINUE TO MONITOR GSA EBUY FOR FURTHER UDDATES [sic]." (capitalization in original). On September 5, 2017, the CBP issued an additional modification cancelling the 2017 RFQ.

On November 9, 2017, Ms. Shaffer, the GSA Program Analyst, sent an email message to CBP Contract Specialist Joe Ohene stating that "[w]e've been working closely with Iris [Reeves] on the requirements for your BPA and are nearing the final stretch. She has been very thorough reviewing all of the requirements compared to your previous SOW as well as the policies for employees." On November 16, 2017, Mr. Ohene sent an email message to Ms. Reeves, requesting that Ms. Reeves send the names of "Relocation Vendors that showed good capability and can be used as part our [sic] Market Research." Ms. Reeves responded that same day and stated that "[t]he list of vendors that we identified when preparing for the DHS Relocation Service Contract were: American Relocation Connection[,] Brookfield[,] Caprelo[,] Interstate Service Group[,] Relocation NW[, and] Sirva." On Tuesday, November 28, 2017, Ms. Reeves sent an email message to Mr. Ohene stating "[s]till on track to getting you the SOW by COB [close of business] Thursday [November 30, 2017]. Is there anything else that I should be working on? If so, could you provide me with a list of expected deliverables so I can plan accordingly." Mr. Ohene responded:

> Thanks for the information. I look forward to the SOW. We will have to tweak some of the initial documents used in FY17 due to the change in the acquisition strategy.
>
> • Market Research
> • Acquisition Plan

I will work on the above two and send them to you. In addition, we will have to work on the Evaluation Factors that will be used to make the award. Terri provided a Sample Evaluation Factors that we can tweak for our acquisition. We may also need to tweak the attached Independent Government Cost Estimate. According to Terri, we will be paying fees to the Contractor who will be coordinating the HHG [Household Goods] shipping with a CHAMP carrier so our IGCE [Independent Government Cost Estimate] needs to reflect the estimated fee and not the actual HHG amount as it is currently listed in the attached. We can use an average of fees off the GSA Relocation Schedule for our IGCE.

The attached independent government cost estimate (the 2017 Independent Government Cost Estimate) referenced in Mr. Ohene's email message, which appears to have been created in connection with the CBP's issuance of the 2017 RFQ, projected expenditures of [redacted] in Fiscal Year 2018, [redacted] in Fiscal Year 2019, [redacted] in Fiscal Year 2020, [redacted] in Fiscal Year 2021, and [redacted] in Fiscal Year 2022, which amounts to a total of [redacted].[5]

On December 5, 2017, Ms. Shaffer of the GSA sent an email message to Mr. Ohene and Ms. Reeves of CBP providing Mr. Ohene and Ms. Reeves with an

email introduction to Kim Spangler, our CO [contracting officer] who oversees the relocation contracts. Her team manages these contracts. Iris inquired earlier today about the companies that are currently identified as small business.

Kim put together information that includes small business as it relates to these contracts and can provide this to you directly. It's a great resource so wanted [sic] to be sure you had all of the information.

Subsequently on December 5, 2017, Ms. Spangler sent an email message to Mr. Ohene and Ms. Reeves which stated:

To support your research please find attached a pricing sheet for the Schedule 48 employee relocation contracts. This sheet includes the NAICS for each SIN and contractor business size classification by SIN as of today.

As you can see, Schedule 48 employee relocation contracts may include multiple NAICS with different business classifications. The Schedule COs made NAICS determinations for these contracts based on the preponderance of work to be performed under the contract at time of award.

---

[5] The 2017 Independent Government Cost Estimate projected a total award value that differed from the amount projected by CBP's June 19, 2017 Acquisition Plan, as well as CBP's 2018 Independent Government Cost Estimate, as discussed below.

FAR 8.405-5(b) states that "Ordering activities should rely on the small business representations made by schedule contractors at the contract level." However, in situations where a MAS contract includes multiple NAICS, the ordering CO's are responsible for assigning the order level NAICS which best corresponds to the work being performed. The order level CO should be re-certifying businesses at the order level per SBA at 71 Federal Register 220 (November 15, 2006), Page 66439. Due to the fact that a contractor's business size may be different at the MAS level from the Ordering Level, with regards to schedule SB set-asides competitors have an avenue for business size protest through the ordering CO.

I'm hoping the attachment will provide the documentation needed for your market research and resulting decision for acquisition strategy.

The parties have stipulated that the attachment to Ms. Spangler's December 5, 2017 email message was "an excel spreadsheet identifying the contractors under Schedule 48 for SIN 653-1, -4, -5, and -7 and the contractors that were then identified as small businesses ('S') for each SIN." The parties also have stipulated that the December 5, 2017 spreadsheet "lists one NAICS Code for each SIN," and that the December 5, 2017 spreadsheet listed:

SIN 653-1: NAICS Code 531210, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-4: NAICS Code 531390, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-5: NAICS Code 531210, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-7: NAICS Code 484210, with nine business listed as small business certified: American Relocation Connections, Choice Relocation Management, Sibcy Cline Relocation Services, TRF Global Mobility, Life International Companies, Move Management Center, Relocation Worldwide, and Weleski Transfer[.]

Although the parties have correctly stipulated that, under NAICS Code 484210, the December 5, 2017 spreadsheet listed nine small business, the parties' joint statement of stipulated facts omitted Reliance Relocation Services from the list of small business under NAICS Code 484210.

Also on December 5, 2017, Ms. Spangler sent another email message to Mr. Ohene and Ms. Reeves that stated "I meant to share that Sibcy [Cline Relocation

Services] provided notification that it will not renew its option and will expire 3/17/18. Relo Direct[6] has also provided notification that it is recertifying as [sic] large business." Consequently, with Sibcy Cline Relocation Services, one of the two contractors identified as a certified small business under NAICS Codes 531210 and 531390, indicating to the GSA that it would not be renewing its option, Choice Relocation Management was the only remaining certified small business under NAICS Codes 531210 and 531390.

On December 6, 2017, Mr. Ohene responded:

Thanks for the pricing sheet and the additional information regarding Sibcy [Cline Relocation Services] and Relo Direct. We plan on opening up the acquisition to both large and small business probably - [redacted] vendors based on market research information. As we move further in the acquisition, I will let you know if anything else is needed.

Two days later, on December 8, 2017, Ms. Reeves sent an email message to Mr. Ohene regarding her preparation of an independent government cost estimate, stating "I believe that the estimates on our volumes for the next 4 years should still be the same. This was based off of statistical information. From a contracting viewpoint can you share with me why this information would change if we are sticking with the same services that we previously had." That same day, Mr. Ohene replied:

Yes- very good question! I will try to a give succinct explanation.

Vendors will be submitting pricing in addition to technical proposals. Their respective pricing is typically compared to the IGCE in determining fair and reasonable pricing and more importantly may be a variable in determining the winning vendor. I am working on the Price Sheet that will be sent to the vendors. The Price Sheet (base period) will look similar to the table below. As it [sic] now, the vendors won't be submitting pricing for Shipment of Household Goods as you have on the ICCE [sic] as CHAMP will be handling this. Instead, the vendors will be charging a fixed fee for Move Management (see highlighted red). In addition, line items like Shipment of POV and also Direct billing as you have on the IGCE won't be on the Price Sheet to be sent to the vendors.

So in essence, there will a big discrepancy between the IGCE and Offeror's submitted pricing as the itemized items on the former won't be on the latter.

On December 13, 2017, Ms. Spangler sent an email message to Mr. Ohene and Ms. Reeves, attached to which was a spreadsheet that "was updated to correct NAICS

---

[6] The parties have stipulated that the "System of Award Management database shows that, Reliance Relocation Services, Inc, dba Relo Direct, was certified as other than small under NAICS code 531210, with certification validity dates from July 31, 2017 to July 31, 2018."

codes & add comments on expiration dates." The parties have stipulated that the December 13, 2017 spreadsheet

listed the following NAICS Codes for each SIN:

SIN 653-1: NAICS Codes 531210 and 531190, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-4: NAICS Codes 531390, 531210 and 541511, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-5: NAICS Codes 531210 and 531190, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-7: NAICS Code 484210, with nine business listed as small business certified: American Relocation Connections, Choice Relocation Management, Reliance Relocation Services, Sibcy Cline Relocation Services, TRF Global Mobility, Life International Companies, Move Management Center, Relocation Management Worldwide, and Weleski Transfer.

As discussed above, Sibcy Cline Relocation Services had indicated to the GSA that it "will not renew its option" that was set to "expire" in March 2018, which results in Choice Relocation Management being the only small business identified in the December 13, 2017 spreadsheet under NAICS Codes 531210, 531190, 531390, and 541511.

According to ARC, however, the December 5, 2017 spreadsheet and the December 13, 2017 spreadsheet provided a "skewed" and incomplete view of the NAICS Codes available under each SIN identified in the spreadsheets. According to ARC's motion for judgment on the administrative record:

The NAICS Codes under each of the SINs for the [2018] RFQ[7] are as follows:

   a. SIN 653-1: 484210 (Used Household and Office Goods Moving); 531210 (Offices of Real Estate Agents and Brokers); 531390 (Other Activities Related to Real Estate); and 541511 (Custom Computer Programming Services);

   b. SIN 653-4: 484210 (Used Household and Office Goods Moving); 531210 (Offices of Real Estate Agents and Brokers); 531390 (Other

---

[7] As discussed below, on January 19, 2018, CBP issued RFQ No. 70B05C18Q00000021.

Activities Related to Real Estate); and 541511 (Custom Computer Programming Services);

c. SIN 653-5: 484210 (Used Household and Office Goods Moving); 531210 (Offices of Real Estate Agents and Brokers); 531390 (Other Activities Related to Real Estate); and 541511 (Custom Computer Programming Services); and

d. SIN 653-7: 484210 (Used Household and Office Goods Moving).[8]

ARC contends that CBP should have, but failed to include NAICS Code 484210 as a NAICS Code under SIN 653-1, 653-4, and 653-5, although NAICS Code 484210 was included as a NAICS Code under SIN 653-7, and that CBP failed to include NAICS Code 541511 as a NAICS Code under SIN 653-1 and SIN 653-5, although NAICS Code 541511 was included as a NAICS Code under SIN 653-4. The administrative record does not appear to address why the agency chose the NAICS Codes it did or did not include as being NAICS Codes under the SINs listed in the December 5, 2017 spreadsheet or in the December 13, 2017 spreadsheet.

According to a July 17, 2018 declaration signed by Mr. Ohene,[9] an undated document titled "RELOCATION SERVICES MARKET RESEARCH REPORT" (the First

---

[8] The NAICS Codes identified by ARC in its motion for judgment on the administrative record as being applicable to SINS 653-1, 653-4, 653-5, and 653-7 are consistent with the NAICS Codes listed on GSA's website. See NAICS schedule/SIN crosswalk, GEN. SERVS. ADMIN., https://www.gsaelibrary.gsa.gov/docs/Schedule-SIN-NAICS-crosswalk.xlsx (last visited Sept. 24, 2018).

[9] Although review under the Administrative Procedure Act (APA) is to be applied to an agency's decision based on the record the agency presents to the court, the court may supplement the administrative record when omission of the supplemental material precludes effective judicial review. See AugustaWestland N. Am., Inc. v. United States, 880 F.3d 1326, 1331-32 (Fed. Cir. 2018); see also Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009). In the above-captioned protest, the parties dispute when the undated First Market Research Report, the Second Market Research Report, dated December 18, 2017, and the undated 2018 Independent Government Cost Estimate were created. The declaration signed by Mr. Ohene is necessary for effective judicial review because, in his declaration, Mr. Ohene discusses his recollection of the dates when each of the documents was created. Mr. Ohene offers an explanation of the differences between the undated First Market Research Report and the Second Market Research Report, dated December 18, 2017, and indicates that he did not rely on the Second Market Research Report, dated December 18, 2017, "in making my decision to solicit the effort on an unrestricted basis." The court, therefore, supplements the administrative record with the July 17, 2018 declaration signed by Mr. Ohene because it contains information necessary for the court's review regarding the extent and nature of the acquisition planning and market research undertaken by the CBP prior to issuing the 2018 RFQ. See AugustaWestland N. Am., Inc. v. United States, 880 F.3d at 1331-32.

Market Research Report) was created "in December 2017" as "the result of a collaborative effort between Iris Reeves and me using a standard DHS template form," which Mr. Ohene states "includes certain pre-checked boxes." (capitalization in original). Mr. Ohene states in his July 17, 2018 declaration that "I reviewed this market research report in December 2017 and made some changes to the document." The First Market Research Report indicates that "market research is required in accordance with: FAR 7.102, Acquisition Planning Policy" and "FAR 10.001, Market Research Policy." According to the First Market Research Report, Mr. Ohene and Ms. Reeves were the "Participants in Market Research," although Ms. Reeves is the only individual who signed the Market Research Report. The First Market Research Report states that the CBP "is seeking a contractor support [sic] to provide relocation assistance to help employees plan and complete moves to their new duty stations as quickly and smoothly as possible. The contractor shall provide relocation services, facilitate real estate transactions and household goods moving services for relocating employees." Under a section titled "Market Research Techniques and Sources," boxes were marked indicating that the "Sources Used in Market Research" include "DHS Advance Acquisition Plan reviewed," "Acquisition history reviewed," "Reviewed requirements with Small Business Specialist," "Reviewed existing DHS-wide and Multi-Component Contract Vehicles with DHS Strategic Sourcing Program Office and/or on DHS Enterprise-wide Contract Vehicle Portal," "Services: Mandatory Federal Supply Schedules," the "Past Performance Information Retrieval System," and the "Excluded Parties List System."

In a section of the First Market Research Report titled "Identify Product/Services and Sources Able to Meet the Requirement," the First Market Research Report states:

> GSA schedule 48-Transportation, Delivery, and Relocation Solutions vehicle is able to meet this requirement based on market research. Schedule 48 was created to assist federal agencies with respect to relocation services. The schedule contains the following applicable SINs/NAICS for the CBP Relocation Services acquisition:
>
> SIN 653-1, Relocation Services Package (Homesale Assistance) NAICS 531210 & 531390
> SIN 653-4, Additional Services NAICS 531210 & 531390
> SIN 653-5, Agency Customization Service NAICS 531210 & 531390
> SIN 653-7, Move Management Services NAICS 484210
>
> The CBP Relocation acquisition encompasses the above SINs/NAICS. Given the multiple NAICS associated with the above reference [sic] SINs, the applicable NAICS at the order level for the preponderance of work ($ value) to be performed under the resultant contract is NAICS 531210 (Office of Real Estates and Brokers). NAICS 531210 is being utilized given the higher estimated value of work to be performed under the NAICS relative to the other NAICS being utilized for this acquisition as supported by Independent Government Cost Estimate.

(capitalization in original). In a section titled "Other Considerations," the First Market Research Report provides:

> A consideration gathered during market research is whether to continue the small business set aside strategy utilized for the predecessor contract. The solicitation requires services on all 4 relevant SINs applicable to the acquisition.; [sic] SIN 653-1- Relocation Services Package (Homesale Assistance SIN 653-4, Additional Services SIN 653-5, Agency Customization Service SIN 653-7, Move Management Services. Experience during contract performance has shown that the requirement is best opened to all GSA vendors due to the experience with the current contractor (ARC) needing to excessively invoice and the requirement of a guaranteed home buyout. If a small businesses [sic] need to invoice so frequently, there is no way they could sustain buying homes, if required. Further, based on information obtained through the GSA Contracting Officer in charge of Relocation Program, there was a not reasonable expectation that CBP would receive three small business proposals needed for maximum competition. Specifically, a number of small business [sic] were exiting the GSA Relocation program. The requirement is such the contractor would have to provide services across 4 SINs relevant to the acquisition, and the market research done did not show sufficient small businesses required to obtain at [sic] 2 to 3 proposals[.[10]]

(capitalization in original). Additionally, in a section of the undated First Market Research Report titled "Provide Market Research Conclusions and Recommendations," the undated First Market Research Report states:

> The Federal Supply Schedule provides CBP with a flexibility of meeting the relocation acquisition needs quickly, efficiently, and cost effectively.
>
> Other benefits include competitive market-based pricing that leverages the buying power of CBP, with the ability to negotiate further discounts at the order level; the ability of the agency to tailor orders to get what it needs by customizing terms and conditions at the order level; alternatives such as blanket purchase agreements and contractor team arrangements and allows CBP to achieve best value at the lowest overall cost alternative to meet the relocation services requirement.

---

[10] When a proposed order under the FSS exceeds the simplified acquisition threshold and requires a statement of work, an agency is required to provide the RFQ "to as many schedule contractors as practicable, consistent with market research appropriate to the circumstances, to reasonably ensure that quotes will be received from at least three contractors that can fulfill the requirements." See FAR § 8.405-2(c)(3)(iii) (2018).

The Federal Supply Schedule, specifically Schedule 48- Transportation, Delivery, and Relocation Solutions is the preferred contract vehicle for the Relocation Services requirement based on market research information, which show [sic] sources available from the referenced vehicle to meet the requirements. In conclusion, a recommendation is made that GSA Schedule 48 Relocation Services be used for the CBP relocation services requirements as supported by the narrative and analysis provided in this document.

(capitalization in original). The First Market Research Report also notes that "IBIS World, a renowned magazine that publishes the largest collection of reports, analysis, statistics and future trends in various industries, provides a positive assessment of the relocation services commercial market place."

Additionally, a second document dated December 18, 2017, which also is titled "RELOCATION SERVICES MARKET RESEARCH REPORT" (capitalization in original) (the Second Market Research Report), appears in the administrative record and is substantially similar to the undated First Market Research Report discussed above, with exception of the differences noted below. The Second Market Research Report indicates that "[m]arket research is required in accordance with: FAR 7.102, Acquisition Planning Policy," as opposed to being required by both "FAR 7.102" and "FAR 10.001," as the undated First Market Research Report indicates. Unlike the undated First Market Research Report, which indicates that the CBP's market research techniques included reviewing the CBP's requirements with a small business specialist and reviewing an existing "DHS Advance Acquisition Plan," the Second Market Research Report does not mention that the CBP reviewed its requirements with a small business specialist or reviewed a "DHS Advance Acquisition Plan." The Second Market Research Report also omitted a sentence providing that "[t]he estimated cost of the new relocation contract was developed based on FY16-17 historical spend on the current relocation contract," which was included in the First Market Research Report. In the signature block on the Second Market Research Report, the date "12/18/2017" appears next to Ms. Reeves' electronic signature.

In the July 17, 2018 declaration signed by Mr. Ohene, Mr. Ohene that:

At some point in time after the decision was made to issue the solicitation as unrestricted (i.e., not set aside for small businesses), I revised that document [the undated First Market Research Report] to correct certain information upon further review given that the market research is dynamic in nature. For instance, some of the pre-checked boxes on Tab 13 should have been unchecked but were not due to inadvertent error. I also removed a sentence on pricing because the information was not developed. I placed a prior date on the revised document to reflect when I believed the market research activity had occurred as reflected by email correspondence with the GSA Contracting Officer (CO) in December 2017. This revised market research report was not relied upon [sic] me in making my decision to solicit

the effort on an unrestricted basis, but rather, was corrected to reflect errors discovered in the Tab 13 document [the undated First Market Research Report].

In general, the market research report is used to document the market research process. For purposes of determining whether to set aside this acquisition, I relied on email correspondence between the Schedule 48 GSA CO Branch Chief [Ms. Spangler] and me in December 2017, and verification of this information by a review of the public database known as System of Award Management (SAM). The information obtained in GSA's emails/spreadsheets was then referenced in the [undated First] market research [Report] document.

(internal references omitted).

According to the July 17, 2018 declaration signed by Mr. Ohene, "[a]fter having several discussions with Ms. Reeves on the values for the Independent Government Cost Estimate (IGCE), the IGCE was sent to me on January 19, 2018, a few hours before issuance of the solicitation." To support the statement, in his declaration, Mr. Ohene references an email message sent from Ms. Reeves to Mr. Ohene on January 19, 2018, which has a subject line of "CBP Historical Transactions Spend and Projected Contract Value" and which states, in its entirety, "[a]s requested. [sic] Estimate is based on FY17 numbers at an annually 2% increase. Please let me know if you require anything further." The document the government identifies in the administrative record and cross-motion for judgment on the administrative record as the independent government cost estimate used to support the 2018 RFQ (the 2018 Independent Government Cost Estimate), which was attached to Ms. Reeves' January 19, 2018 email message, is an undated document that does not contain a cover sheet identifying the document as the independent government cost estimate, nor a narrative explaining what the document contains. Rather, the 2018 Independent Government Cost Estimate contains five charts providing what appear to be the CBP's estimates of costs for a base period of performance and four one-year option periods of performance. For each period of performance, the 2018 Independent Government Cost Estimate identifies a "Service Type" for SINS 653-1, 653-4, 653-5, and 653-7, "Projected Transaction Count," and a projected cost on a "[redacted] Home Value." (capitalization in original). The 2018 Independent Government Cost Estimate indicates that the CBP anticipates the value of the base period of performance to be [redacted], the first option period of performance to be [redacted], the second option period of performance to be [redacted], the third option period of performance to be [redacted], and the fourth option period of performance to be [redacted], thereby amounting to a total of [redacted] if all option periods were to be exercised.

On January 19, 2018, the CBP issued RFQ No. 70B05C18Q00000021 (the 2018 RFQ), which is the RFQ at issue in the above-captioned bid protest. The parties have stipulated that the 2018 RFQ was "publically released . . . to certain Schedule 48 holders, including ARC, for a single-award Blanket Purchase Agreement. The RFQ indicated that the underlying procurement was unrestricted, i.e., the procurement was not set aside for

small businesses." The 2018 RFQ includes FAR Clause 52.212-2 (2018), titled "Evaluation – Commercial Items," which states that the CBP intends to award a single blanket purchase agreement "to the responsible Offeror whose quote conforming to the solicitation will be most advantageous to the Government, price and other factors considered." The parties have stipulated that, "[w]hen released, the [2018] RFQ did not reference any NAICS Code under which the underlying procurement was being issued," and that a "separate acquisition plan [different from the June 19, 2017 Acquisition Plan] was not drafted for the 2018 RFQ."

The parties also have stipulated that the 2018 RFQ "requested services listed under the same SINs as the 2017 RFQ, i.e., GSA Federal Supply Schedule 48, SINS 653-1, 653-4, 653-5 and 653-7," and, that "[t]he predecessor BPA procurement requested services listed under GSA Federal Supply Schedule 48, SINS 653-1, 653-4, 653-5 and 653-7." The 2018 RFQ indicates that Move Management Services are to be provided through GSA's CHAMP, and that offerors must demonstrate an ability to manage "the household goods moving services." In a section of the 2018 RFQ regarding invoicing, the 2018 RFQ states:

> Contractor shall bill CBP bi-monthly for all SINs and services described within the Statement of Work and referenced in the BPA. To promote cost efficiency for both CBP and the Contractor, the Contractor shall submit a maximum of two (2) invoices per employee per month. Invoices shall be itemized with SIN's clearly identified for each itemized line. CHAMP line items should be identified as CHAMP and separately itemized from SIN 653-7.

In the Price Sheet attached to the 2018 RFQ, the CBP requests that offerors provide "proposed BASE PERIOD fees/rates" for SINs 653-1, 653-4, 653-5, and 653-7. (capitalization for original). For SIN 653-7, the CBP only requests that offerors provide a "Service Fee." When discussing the difference in offeror pricing under the 2017 RFQ and offeror pricing under the 2018 RFQ, defendant states that, under the 2018 RFQ, "the unite [sic] costs for shipment of household goods would no longer be part of the contractor's overall contract price. Rather, a pre-approved CHAMP service provider must perform these services." ARC states that the 2018 RFQ "simply changed the pricing the contractor could charge for move management services, i.e., such charges were limited to the CHAMP tariffs," and that "CHAMP is not an organization or entity; it's nothing more than a pricing scheme, which has the effect of, *inter alia*, increasing the Industrial Funding Fee collected by the GSA for the performance of the services." (emphasis in original).

According to the parties' joint statement of stipulated facts, on February 1, 2018, ARC contacted the DHS Office of Small & Disadvantaged Business Utilization "to discuss the ongoing contract, for which ARC is the contractor, and to discuss follow-on work." The parties indicate in their joint statement of stipulated facts that, "[d]uring this discussion, ARC requested information as to why the RFQ was not set aside for small businesses, as it had been with the predecessor BPA procurement." The parties also stipulated that the CBP did not consult with the DHS Office of Small & Disadvantaged Business

Utilization "prior to withdrawing the procurement from a small business set-aside" and did not "provide a written statement to the SBA [Small Business Administration] at least 30 days prior to the issuance of the solicitation that explained why small business prime contract participation was unlikely."

On February 2, 2018, Anthony Bell, a Small Business Advisor with the DHS Office of Small & Disadvantaged Business Utilization sent an email message to contracting personnel at the CBP. In his February 2, 2018 email message, Mr. Bell stated:

> Yesterday morning I had a call with ARC to discuss their contract with CBP regarding invoices and follow on work. I asked Arc [sic] to continue the dialogue with CBP to resolve the invoice issue. The focus of my office is the planned unrestricted acquisition strategy for the follow-on work. ARC is questioning why after 10 years of this work being a set aside, is the follow-on work going out as unrestricted? ARC stated that they are a small business in SINs 653-1, 653-4, 653-5 and 653-7 on GSA Schedule 48. ARC mentioned there are three other small businesses on Schedule 48 with all four SINs. Please see the below information provided by ARC.
>
> I have verified this information to be correct. If these are the SINs required for this work, there [sic] four small businesses on GSA Schedule 48 that meet the criteria. However, we realize there's more to a set aside than just having all the required SINs. Responsibility has to be taken into account and my office can't speak on whether these small businesses have been deemed responsible. Market research should determine that. With this said, and the rule of two being met, predicated on these four firms being deemed responsible, what factor(s) determined an unrestricted acquisition strategy?
>
> Rick – Kevin Boshears acknowledges the trillion set asides you have done and views you as a friend to the small business community. So, we know you know small business. This email is just to ensure we have done our due diligence as it relates to the acquisition strategy here. I'm not clear on what GSA was saying about not doing a set aside, but I am clear that GSA does have the most small business friendly procedures and the DHS [Department of Homeland Security] OSDBU [Office of Small & Disadvantaged Business Utilization] takes their advice with a heaping of skepticism.

The "information provided by ARC" consisted of four screenshots of eligible small businesses under SINs 653-1, 653-4, 653-5, and 653-7. Mr. Bell noted that the "companies that are on all 4 SINs [in the screenshots from ARC] are: 1. American Relocation Connections 2. Reliance Relocation Services 3. Sibcy Cline Relocation Services 4. TRC Global Mobility."

Mr. Ohene responded to Mr. Bell's email message approximately forty-five minutes later, stating:

Thanks for the email. Attached is a spreadsheet of the Schedule 48 employee relocation contracts NAICS for each SIN and contractor business size classification by SIN as of **December 5, 2017**. I received this spreadsheet from the GSA Contracting Officer in charge of the Relocation contracts. As you can see, there are some discrepancies between the attached spreadsheet and the schedule screenshots provided in your email. I am also aware GSA tends to delay in updating its schedule information so the Agency's website schedule/SIN/business size classification information may not necessary [sic] be the most current. You stated that information provided by ARC has been verified to be correct. So I assume that information has been verified with the SBA office?

(emphasis in original). That same day, on February 2, 2018, Mr. Bell replied to Mr. Ohene's email message and stated:

Agree, there is some discrepancy which GSA needs to clarified [sic]. Rick will discuss this matter with Francine next week.

No, I have not verified this information with SBA. SBA will only verify small business status when an official size protest is submitted. I reviewed ARC's information in SAM [System for Award Management] for NAICS code 484210 (please see the below screen shot). Is this the NAICS code assigned to this requirement? Please understand, I'm not advocating for ARC, as mentioned earlier, we are here just to ensure the SB [small business] community gets a fair opportunity. At the end of the day, if the data does not support a set aside, my office will be the first to tell small businesses to stand down. I'm standing by to offer any additional assistance needed.

Also on February 2, 2018, Mr. Ohene sent an email message to Ms. Spangler, the GSA Contracting Officer, which stated:

We have an issue with our acquisition strategy with regard to the recompete for the CBP Relocation Services requirements and would appreciate your assistance. Based on market research, we decided to pursue an unrestricted acquisition strategy for the CBP relocation requirements. You sent me the attached spreadsheet comprising the Schedule 48 employee relocation contracts NAICS for each SIN and contractor business size classification by SIN as of December 5, 2017. On the attached spreadsheet, American Relocation Connections (ARC), our current contractor, is large for all the SINS with exception of Move Management Service 653-7. ARC, however, has indicated they are still small business in SINs 653-1, 653-4, 653-5 on GSA Schedule 48, and sent the below screenshots to our Small Business Office to 'confirm' their small business status. Essentially, ARC is complaining that we are not doing a set- aside [sic]. We, however, based on market research and in addition to our experience with the contractor

believe that the unrestricted acquisition strategy is appropriate for our recompete.

Given the situation, I feel that our unrestricted acquisition strategy may have to be put on hold until ARC's small business status is adjudicated. Would you be available next week to discuss ARC's small business status or send me something in writing to confirm the information on the attached EEAC spreadsheet is the most current with respect to the Schedule 48 contractors' business size classification?

That same day, Ms. Spangler responded:

I can certainly discuss with you next week.

I'm sure you are aware that SB [small business] set asides are not required under FAR Part 8 for FSS [Federal Supply Schedule] BPA/orders. So the concern I'm guessing is coming from your OSDBU review of the acquisition strategy decision not to set-aside relative to goals and advocacy.

Referencing the email sent to you on 12/5/17, due to the ERRC [Employee Relocation Resource Center] contracts having 4 SINs which have multiple NAICS, the ordering agency must determine and identify the applicable NAICS at the <u>order</u> level for the preponderance of work ($ value) to be performed. This is instruction from the Small Business Administration found at 71 Federal Register 220 (November 15, 2006), Page 66439. This same information was provided at GSA's Supplier meeting on 12/13/17 (see bullet 3 on attached meeting notes). I think ARC was in attendance.

The SBA determines business size according to <u>NAICS</u>, not the GSA contract. See page 5 of ARC's SAM_Reps & Certs (attached).

Which NAICS did you issue your solicitation under?

If your solicitation was issued and appropriately falls under a NAICS <u>other</u> than 653-7 and you decide to change strategy for SB set aside, you will have issues with all other contractors. Why? Because according to SAM there are no small businesses eligible to compete (Sibcy & Choice are both expiring this quarter).

(emphasis in original).

On February 5, 2018, the CBP issued Amendment No. 1 to the 2018 RFQ. Amendment No. 1 stated that the NAICS Code for the 2018 RFQ "is 531210-Offices of

Real Estate Agents and Brokers," which has a size standard of $7,500,000.00.[11] Amendment No. 1 also made administrative and typographical revisions, responded to questions from potential offerors, and extended the quotation submission due date from February 8, 2018 to February 13, 2018.

The next day, on February 6, 2018, Mr. Ohene sent an email message to Mr. Bell of the DHS Office of Small & Disadvantaged Business Utilization that stated:

The GSA Relocation Point of Contract [sic] has provided additional clarification and information that addresses ARC's 'small business' issue.

As indicated in the spreadsheet I sent last week, the GSA Employee Relocation Service Center contracts has 4 SINs with multiple NAICS as follows:

- SIN 653-1  NAICS 531210 & 531390
- SIN 653-4  NAICS 531210 & 531390
- SIN 653-5  NAICS 531210 & 531390
- SIN 653-7  NAICS 484210

The CBP Relocation acquisition encompasses the above SINs/NAICS. Given the multiple NAICS, the Ordering Agency must determine and identify the applicable NAICS at the order level for the preponderance of work ($ value) to be performed. The CBP Relocation solicitation was issued under **NAICS 531210 (Office of Real Estates and Brokers)** , [sic] and appropriately falls under that code given its higher estimated value relative to the as supported by our IGCE. Please note ARC is **large business** under NAICS 531210 as shown in your SAM screenshot.

Second, contemplating a set aside for the reference NAICS is a moot point as I was informed by the GSA POC [point of contact] that some of the small business vendors provided in your email are leaving the Relocation program this quarter. Sibcy Cline and Choice Relocaton [sic] are both expiring this

---

[11] As discussed below, according to the December 13, 2017 spreadsheet and Sibcy Cline Relocation Services' statement that it would not be renewing its contract that was set to expire in March 2018, at the time the 2018 RFQ was issued on January 19, 2018, there was only one certified small business under NAICS Code 531210, the NAICS Code applicable to the 2018 RFQ. According to the December 13, 2017 spreadsheet, Sibcy Cline Relocation Services' statement that it would not be renewing its contract, and Reliance Relocation Services' statement that it was certifying as an other than small business, under the NAICS Code applicable to the 2017 RFQ, NAICS Code 484210, which has a size standard of $27,500,000.00, there were seven certified small businesses. In the December 13, 2017 spreadsheet, Reliance Relocation Services was listed as a small business under NAICS Code 484210, but as an other than small business under NAICS Code 531210.

quarter. Further, Reliance Relocation Services has recertified as large business. TRC Global Mobility is also large. So even [sic] ARC were to be small business for the sake of argument under NAICS 531210 , [sic] there won't be enough small businesses [sic] vendors to meet the competition threshold[.]

Third, I inquired why ARC's GSA schedule information lists the Contractor to be small business under SIN 653-1, 653-4, 653-5 as shown in the screenshot you sent last week Friday. According to the GSA Relocation POC, this is unfortunately a system issue in that it is picking up on the "Schedule" awarded NAICS not the SIN NAICS (fed by SAM). So one has to further research by clicking on the Contractor to reach the Contractor Information page. This page identifies the "Schedule" level NAICS of that particular contract. For ARC, you will see that the contract was awarded with the 484210 NAICS (SIN 653-7). That is why the NAICS must be identified and verified at the ordering level to determine the contractor's size in relation to the order. As stated, The NAICS at the ordering level for our Relocation acquisition is 531210 for which ARC is designated as large business in SAMS [sic].

(emphasis in original). Mr. Bell responded on February 6, 2018, stating "[t]hanks for the additional information/research. Unless Kevin and Darlene have any objections, I have no objections to this requirement going unrestricted."

On February 7, 2018, Richard Travis, a CBP Contracting Officer, completed a Small Business Review Form, at the request of Ms. Reeves, for the employee relocation services that were to be acquired under the 2018 RFQ. In a section titled "Procurement Information/History," the Small Business Review Form indicates that the CBP previously had used NAICS Code 48210, which has a small business size standard of $27,500,000.00. The Small Business Form, however, states that NAICS Code 531210, which has a small business size standard of $7,500,000.00, is being utilized in the 2018 RFQ "given the higher estimated value of work to be performed under the NAICS relative to the other NAICS being utilized for this acquisition." The Small Business Review Form also states that "there was a not reasonable expectation that CBP would receive two to three small business proposals needed for maximum competition." On February 9, 2018, a DHS Small Business Specialist marked a box indicating his "[c]oncurrence" with the CBP's decision, and, on February 12, 2018, a SBA Procurement Center Representative marked a box indicating his "[c]oncurrence" with the CBP's decision.

On February 12, 2018, ARC filed a bid protest at the United States Government Accountability Office (GAO), in which ARC alleged that the CBP violated the FAR, the SBA's regulations, and the DHS' small business procurement policies. The contracting officer's statement of facts was submitted to the GAO on February 13, 2018 and stated that ARC submitted a proposal in response to the 2018 RFQ. On February 21, 2018, the CBP requested summary dismissal of ARC's February 12, 2018 bid protest to the GAO, alleging that ARC was not an interested party. The CBP noted that the NAICS Code for

the 2018 RFQ was NAICS Code 531210 and argued that "ARC has certified in the SAM that it is not a small business under NAICS code 531210. Thus, if ARC succeeded in this protest and the BPA solicitation were [sic] set aside for small business concerns, ARC would be ineligible to compete." On February 26, 2018, ARC filed an opposition to the CBP's request for summary dismissal, in which ARC argued that it was an interested party because ARC is not required to certify its small-business size in an unrestricted procurement and stated that the CBP's argument in "the Agency's Request for Summary Dismissal alerted ARC to an administrative error in its SAM registration, which it has promptly researched and corrected. ARC has updated its certifications to reflect that it is a small business under NAICS Code 531210." On February 27, 2018, ARC filed a supplemental response to the CBP's request for summary dismissal at the GAO, in which ARC noted that it was "not protesting whether the Agency has selected the proper NAICS Code for the instant RFQ, which was issued an [sic] unrestricted solicitation." ARC, however, reasserted that it was an interested party because "(1) it was an actual bidder under the unrestricted RFQ and would be a prospective bidder under a newly issued set-aside RFQ using NAICS Code 531210; and (2) it would be in line for award in either situation as both a responsible and responsive bidder."

On March 13, 2018, the government filed its Agency Report with the GAO. In its March 13, 2018 Agency Report, the government asserted that the GAO should deny ARC's bid protest because the "'Rule of Two' is inapplicable to this type of acquisition and even if it applied, the Agency properly conducted market research and determined that two or more small businesses could not compete under the applicable North American Industry Classification System (NAICS) code assigned to the procurement." On May 18, 2018, the GAO dismissed ARC's bid protest. See Am. Relocation Connections, LLC, B-416035, 2018 WL 2316177, at *1 (Comp. Gen. May 18, 2018). The GAO stated that ARC argued in its bid protest at the GAO that CBP "was required to set aside the solicitation, which anticipates the establishment of a blanket purchase agreement (BPA) under the General Services Administration's (GSA) Federal Supply Schedule (FSS), for small businesses," and that CBP's "market research and decision not to set aside the RFQ were unreasonable." Id. The GAO then determined that ARC was an interested party "[b]ased on the protestor's updated representation" in SAM. Id. at *3. The GAO also concluded that CBP was not required to set-aside the 2018 RFQ because "the contracting officer here has discretionary authority to set-aside an order against the FSS, but is not required to do so." Id. at *7. According to the GAO, "agencies are not required to follow the Small Business Rule of Two[12] when issuing orders or establishing BPAs under the FSS." Id. at *4. When addressing ARC's arguments concerning the CBP's market research, the GAO stated:

---

[12] The GAO stated that the "Small Business Rule of Two" "requires agencies to set aside for small business participation a procurement valued over the simplified acquisition threshold if there is a reasonable expectation of receiving fair market offers from at least two small business concerns." Am. Relocation Connections, LLC, 2018 WL 2316177, at *3 (citing 13 C.F.R. § 125.2(e)(6)(i) (2018); and FAR § 19.502-2 (2018)).

Next, ARC raises a number of challenges to CBP's market research and its conclusion that the agency was not likely to receive proposals from two or more small businesses at fair market prices. However, as discussed above, agencies have the discretion to set aside procurements under the FSS. FAR § 8.405-5(a)(2). Thus, even if our Office were to agree with ARC that CBP's market research was not reasonable, there would be no basis for our Office to recommend any corrective action because the agency would not be required to set aside the procurement. See AeroSage, LLC, B-414640, B-414640.3, July 27, 2017, 2017 CPD ¶ 233 at 5 (agencies have the discretion to seek a waiver of the nonmanufacturer rule, FAR § 19.102(f)(5); based on this discretion, an agency's refusal to seek a waiver of the nonmanufacturer rule does not provide a basis to sustain a protest). We therefore find that ARC's argument fails to state adequate legal grounds of protest, and therefore dismiss it on that basis. See 4 C.F.R. § 21.5(f).

Am. Relocation Connections, LLC, 2018 WL 2316177, at *7 (footnote omitted).

On July 3, 2018, ARC filed its complaint in this court in the above-captioned pre-award bid protest. In its complaint in this court, ARC states that it is "challenging the terms of the [2018] RFQ, and seeking an order declaring that the Agency [the CBP] impermissibly failed to set-aside the Procurement for small businesses, and that the Agency's actions in releasing the [2018] RFQ as an unrestricted acquisition were arbitrary and capricious and contrary to applicable procurement law and regulation." ARC argues that CBP "failed to undertake any advance acquisition planning or conduct any advance market research for the Procurement prior to selecting the contract vehicle or prior to making the decision to release the RFQ as an unrestricted acquisition," and that CBP's decision to release the 2018 RFQ as an unrestricted procurement was based on "virtually no information at all." ARC also contends that:

The procurement record clearly shows that any acquisition planning or market research that the Agency may have conducted with respect to the Procurement was undertaken after the release of the RFQ; after reducing the small business size standard; and after the Agency selected GSA FSS 48 as the procurement vehicle, each of which is a violation of procurement law.

According to ARC, the CBP's alleged failure to undertake advance acquisition planning and market research violates the regulations of the SBA, as well as the "FAR, as supplemented by the DHS HSAR [DHS Acquisition Regulations] and implemented by the DHS HSAM [DHS Acquisition Manual]."

Regarding the GAO's May 18, 2018 decision, ARC argues that:

The GAO failed to address whether the Agency's contracting officer's exercise of its discretion in selecting FSS Schedule 48 and then subsequently deciding to severely reduce the applicable size standard was

23

arbitrary or capricious, or in violation of procurement law when the acquisition record was entirely deficient of any information, let alone reliable or accurate information, upon which the decision was based.

ARC further asserts that the GAO's decision incorrectly concluded that "the Agency's discretion cannot be challenged regardless of how unreasonably such discretion is exercised." In its requests for relief, ARC requested a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining award or performance of a contract under the 2018 RFQ. Alternatively, ARC argues that "ARC is entitled to bid preparation and other costs, attorney fees under the Equal Access to Justice Act or such other and further relief as this Court deems just and proper."

On the same day protestor filed its protest, July 3, 2018, the court held an initial status conference with the parties in the above-captioned bid protest. During a subsequent status conference on July 9, 2018, defendant indicated that the CBP would voluntarily stay an award under the 2018 RFQ until the end of September 2018, and ARC indicated that it was no longer seeking a temporary restraining order. Thereafter, on July 10, 2018, defendant submitted to the court the administrative record in the above-captioned bid protest. On July 13, 2018, ARC filed a motion to strike documents from the administrative record, or, in the alternative, a motion to compel or a motion for discovery, as well as a motion to supplement the administrative record. In its July 13, 2018 motion, ARC argued that the court should strike from the administrative record the undated First Market Research Report, the Second Market Research Report dated December 18, 2017, and the undated 2018 Independent Government Cost Estimate "because they lack proper evidentiary support" and "cannot be authenticated as being part of the Government's decision-making process."

On July 16, 2018, the court held a hearing to discuss with the parties ARC's July 13, 2018 motion. Subsequently, on July 16, 2018, the court issued an Order directing defendant to submit any documents which potentially could be used to authenticate the undated First Market Research Report, the Second Market Research Report dated December 18, 2017, and the undated 2018 Independent Government Cost Estimate. On July 17, 2018, defendant submitted the declaration signed by Mr. Ohene, discussed above, in which Mr. Ohene described his recollection of when, according to him, the undated First Market Research Report, the Second Market Research Report dated December 18, 2017, and the undated 2018 Independent Government Cost Estimate were created, as well as the differences between the undated First Market Research Report and the Second Market Research Report dated December 18, 2017. Also on July 17, 2018, ARC submitted an unopposed motion to withdraw its motion to supplement the administrative record. On July 18, 2018, the court issued an Order denying ARC's motion to strike and granting ARC's unopposed motion to withdraw its motion to supplement the administrative record. On July 20, 2018, ARC and defendant submitted a joint statement of stipulated facts.

Subsequently, on July 25, 2018, ARC filed a motion for judgment on the administrative record. In its motion for judgment on the administrative record, ARC

asserts that CBP failed to perform acquisition planning and market research in accordance with FAR Part 7 (2018) and FAR Part 10 (2018). ARC also argues that the CBP violated the SBA's regulation at 13 C.F.R. § 125.2 (2018), which ARC argues requires that a federal agency conduct market research concerning the extent of small business participation in an acquisition. ARC asserts that CBP selected the "GSA FSS Schedule 48 as the acquisition vehicle for the RFQ without undertaking any acquisition planning or market research," and that CBP's "decision not to set aside the [2018] RFQ for small business lacked a rational basis as the decision was not based on (1) any acquisition plan, or (2) any advance market research." According to ARC's motion for judgment on the administrative record:

> Such research must precede decisions whether to utilize the GSA Federal Supply Schedules ("FSS"), which NAICS code (and thus what size standard) is applicable to the procurement, or whether or not to set-aside an acquisition for small businesses. See e.g., FAR 8.404(c) [(2018)] ("Orders placed under a Federal Supply Schedule contract are not exempt from the development of acquisition plans (see subpart 7.1)"). Nor does FAR Part 8 [(2018)] exempt FSS orders from the advance acquisition planning requirements or market research requirements of the SBA regulations.

ARC also contends that the administrative record "clearly indicates" that the undated First Market Research Report, the Second Market Research Report dated December 18, 2017, the undated 2018 Independent Government Cost Estimate, the December 5, 2017 and December 13, 2017 spreadsheets that were sent from Ms. Spangler to CBP contracting personnel, and the February 7, 2018 DHS Small Business Review Form "were prepared after the RFQ was issued and likely after ARC registered its complaint with the Agency regarding the RFQ being unrestricted."

On August 8, 2018, defendant filed a response to protestor's motion for judgment on the administrative record and a cross-motion for judgment on the administrative record. In its August 8, 2018 cross-motion, defendant argues that CBP's decision to use the FSS was reasonable because the CBP's June 19, 2017 Acquisition Plan "identified the reasons why using the FSS as an acquisition tool here was a reasonable exercise of agency discretion." Defendant asserts that "small business set-aside preferences do not apply to FSS contracts," and that CBP's "prior, discretionary set-asides do not expand CBP's obligations under the current FSS solicitation." Defendant also asserts that CBP's acquisition of employee relocation services did not qualify to be set-aside because, when CBP issued the 2018 RFQ in January 2018, the only small business that qualified under NAICS Code 531210, the NAICS Code that CBP chose to use for the procurement, was Choice Relocation Management.

On August 13, 2018, ARC filed a response to defendant's cross-motion for judgment on the administrative record and a reply in support of its motion for judgment on the administrative record. In its August 13, 2018 filing, ARC argues that the "crux" of its complaint and motion for judgment on the administrative record is "that the Agency

made critical decisions about this procurement either without having performed the requisite advance acquisition planning or market research, or prior to doing so." ARC again asserts that the CBP failed to perform acquisition planning or market research prior to selecting the FSS as its "acquisition vehicle," selecting the NAICS Code for the 2018 RFQ, and "removing the services from the small business program." ARC also argues that defendant has not addressed its failure to comply with the SBA's regulations, which ARC indicates requires the CBP to conduct market research to determine the type and extent of possible small business participation in an acquisition.

On August 17, 2018, defendant filed a reply, in which defendant asserted that the Acquisition Plan created in connection with the 2017 RFQ also supported the 2018 RFQ, and that ARC "fails to acknowledge that the 2017 and 2018 RFQs were not separate acquisitions. The 2017 RFQ was cancelled which resulted in issuance of the 2018 RFQ for procurement of the relocation services identified in the plan." Defendant also contends that, "once CBP decided to use the FSS to purchase relocation services, it had no further obligation to consider small business preferences – including the requirements of the Small Business Act cited by ARC (13 C.F.R. § 125 *et.,* [sic] *seq.*)." (emphasis in original). According to defendant, the SBA regulation at 13 C.F.R. § 125.2(c) is inapplicable to the CBP's procurement.

On August 21, 2018, the court issued an Order directing the parties each to submit a supplemental filing addressing whether and why the SBA regulation at 13 C.F.R. § 125.2(c) applies to CBP's procurement in the above-captioned protest, whether the CBP complied with 13 C.F.R. § 125.2, and whether failing to comply with 13 C.F.R. § 125.2 would be prejudicial to ARC. On August 29, 2018, ARC and defendant both submitted their supplemental filings. In ARC's August 29, 2018 filing, ARC asserts that 13 C.F.R. § 125.2(c) does apply to the procurement at issue in the above-captioned bid protest, that CBP did not comply with 13 C.F.R. § 125.2 when issuing the 2018 RFQ, and that CBP's failure to comply with 13 C.F.R. § 125.2 was prejudicial to ARC. Defendant, however, asserts in its August 29, 2018 filing that 13 C.F.R. § 125.2(c) does not apply to the procurement at issue in the above-captioned bid protest and that "ARC was not prejudiced by any alleged failure to engage with SBA." On September 5, 2018, the court heard oral argument in the above-captioned protest.

## DISCUSSION

Rule 52.1(c)(1) (2018) of the Rules of the United States Court of Federal Claims (RCFC) governs motions for judgment on the Administrative Record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005))); see also Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1356-57; Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir.

2018); Rotech Healthcare Inc. v. United States, 118 Fed. Cl. 408, 413 (2014); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. 6, 21 (2013); DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010). Pursuant to RCFC 52.1, in a bid protest, the court reviews the agency's procurement decision to determine whether it is supported by the administrative record. See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 481 (2013); see also CR/ZWS LLC v. United States, 138 Fed. Cl. 212, 223 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1353-54).

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4) (2012)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("Under the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). See

<u>Croman Corp. v. United States</u>, 724 F.3d 1357, 1363 (Fed. Cir.) ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting <u>Banknote Corp. of Am. v. United States</u>, 365 F.3d at 1350-51 (citing <u>Advanced Data Concepts, Inc. v. United States</u>, 216 F.3d 1054, 1057-58 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2000)), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2013). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (2012);[13] <u>see also</u> Tinton Falls

---

[13] The language of 5 U.S.C. § 706 provides in full:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and Bannum, Inc. v. United States, 404 F.3d at 1351)); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381 (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting Bannum, Inc. v. United States, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A) (2000))); NVT Techs., Inc. v. United States, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); Synergy Sols., Inc. v. United States, 133 Fed. Cl. 716, 734 (2017) (citing Banknote Corp. of Am. v. United States, 365 F.3d at 1350); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d at 1351), reh'g en banc denied (Fed. Cir. 2011); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (citing Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1285–86)); Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); Nat'l Gov't Servs., Inc. v. United States, 137 Fed. Cl. 715, 735 (2018) (quoting Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009)); McVey Co., Inc. v. United States, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 531-32 ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing Weeks Marine, Inc. v. United States, 575 F.3d at 1358)), subsequent determination, 96 Fed. Cl. 119 (2010).

The United States Supreme Court has identified sample grounds which can

constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform meaningful review . . . ."); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285-86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33). "'"If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."'" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 631 (2014); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

Stated otherwise by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated: "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (internal citations omitted) (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004); and Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381)), appeal withdrawn, 559 F. App'x 1033 (Fed. Cir. 2014); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. 369, 382 (2013); Alamo Travel Grp., LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002); Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 392 (1999) ("Courts must give great deference to agency procurement decisions and will not lightly overturn them." (citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985))), appeal dismissed, 6 F. App'x 867 (Fed. Cir. 2001), and superseded by regulation as recognized in MVS USA, Inc. v. United States, 111 Fed. Cl. 639 (2013).

According to the United States Court of Appeals for the Federal Circuit:

> Effective contracting demands broad discretion. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); Sperry Flight Sys. Div. v. United States, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); see NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986); Tidewater Management Servs., Inc. v. United States, 573 F.2d 65, 73, 216 Ct. Cl. 69

(1978); RADVA Corp. v. United States, 17 Cl. Ct. 812, 819 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." Tidewater Management Servs., 573 F.2d at 73, 216 Ct. Cl. 69.

Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958-59; see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), reh'g en banc denied (Fed. Cir. 2014); Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995 (Fed. Cir. 1996); Geo-Med, LLC v. United States, 126 Fed. Cl. 440, 449 (2016); Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); Furthermore, according to the United States Court of Appeals for the Federal Circuit:

> Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

PAI Corp. v. United States, 614 F.3d at 1351; see also AgustaWestland N. Am., Inc. v. United States, 880 F.3d at 1332 ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33 (internal quotation marks and citation omitted))); Weeks Marine, Inc. v. United States, 575 F.3d at 1368-69 ("We have stated that procurement decisions 'invoke [ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (alteration in original) (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058))).

On a motion for judgment on the administrative record, a disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Tinton Fall Lodging Realty, LLC v. United Sates, 800 F.3d at 1364; see also Grumman Data Sys. Corp. v. Dalton, 88 F.3d at 995-96; Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 578 (2017); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. at 349; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 340. The Federal Circuit has indicated that "[t]his court will

not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999)); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1387; Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 759 (2012); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 380 (2004).

> A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

Bannum, Inc. v. United States, 404 F.3d at 1351; T Square Logistics Servs. Corp. v. United States, Fed. Cl. 550, 555 (2017); FirstLine Transp. Sec., Inc. v. United States, 119 Fed. Cl. 116, 126 (2014), appeal dismissed (Fed. Cir. 2015); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Archura LLC v. United States, 112 Fed. Cl. 487, 496 (2013). To prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 907 ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."); IT Enter. Sols. JV, LLC v. United States, 132 Fed. Cl. 158, 173 (2017) (citing Bannum v. United States, 404 F.3d at 1357-58); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 694-96 (2010). In describing the prejudice requirement, the Federal Circuit also has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." Data General, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." Statistica, 102 F.3d at 1582; see CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award--that it was within the zone of active consideration.'") (citation omitted).

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir.), reh'g denied

(Fed. Cir. 1999); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 912; Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1326 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2011); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33; OMV Med., Inc. v. United States, 219 F.3d 1337, 1342 (Fed. Cir. 2000); Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057; Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir. 2000).

In Data General Corp. v. Johnson, the United States Court of Appeals for the Federal Circuit wrote:

> We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract . . . . The standard reflects a reasonable balance between the importance of (1) averting unwarranted interruptions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances. This is a refinement and clarification of the "substantial chance" language of CACI, Inc.-Fed. [v. United States], 719 F.2d at 1574.

Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1996); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 912; Bannum, Inc. v. United States, 404 F.3d at 1353, 1358 ("The trial court was required to determine whether these errors in the procurement process significantly prejudiced Bannum . . . . To establish 'significant prejudice' Bannum must show that there was a 'substantial chance' it would have received the contract award but for the [government's] errors" in the bid process. (citing Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Alfa Laval Separation, Inc. v. United States, 175 F.3d at 1367; Statistica, Inc. v. Christopher, 102 F.3d at 1581; and Data Gen. Corp. v. Johnson, 78 F.3d at 1562); see also Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011); Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057 (using a "reasonable likelihood" rule); Stratos Mobile Networks USA, LLC v. United States, 213 F.3d at 1380 (using a "substantial chance" test); Am. Corr. Healthcare, Inc. v. United States, 137 Fed. Cl. 395, 410 (2018) (using a "substantial chance" test); Vintage Autoworks, Inc. v. United States, 132 Fed. Cl. 143, 149 (2017) (using a "substantial chance" test); Active Network, LLC v. United States, 130 Fed. Cl. 421, 427 (2017) (using a "substantial chance" test); Archura LLC v. United States, 112 Fed. Cl. at 496 (using a "substantial chance" test); Info. Scis. Corp. v. United States, 73 Fed. Cl. 70, 96 (2006) (using a "substantial chance" test), recons. in part, 75 Fed. Cl. 406 (2007).

In the above-captioned bid protest, ARC asserts that CBP failed to perform "any" acquisition planning or market research prior to deciding to obtain employee relocation services from the FSS, inappropriately "changing the small business size standard

applicable to the Procurement," and issuing 2018 RFQ as an unrestricted procurement. ARC asserts in its motion for judgment on the administrative record in this court that:

> Under FAR § 7.102 [(2018)], the Agency was required "to perform acquisition planning and conduct market research for all acquisitions in order to promote and provide for:"
>
> > 1. "Full and open competition or, when full and open competition is not required" by FAR Part 6;
> >
> > 2. "Selection of appropriate contract type"; and
> >
> > 3. "Appropriate consideration of the use of pre-existing contracts, including interagency and intra-agency contracts, to fulfill the requirement, before awarding new contracts."
>
> FAR Part 7 does not exempt any agency or any procurement from the requirement to undertake acquisition planning.

ARC contends that FAR § 7.105(b)(i)(3) (2018) requires that a "properly prepared" acquisition plan must include consideration of whether small business concerns may be utilized, and that FAR § 7.103(u) (2018) requires that federal agencies implement procedures to ensure that acquisition planners structure contract requirements to facilitate competition among small business concerns to the maximum extent possible. According to ARC's motion for judgment on the administrative record in this court:

> The Secretary of DHS has implemented FAR Part 7 through the promulgation of the DHS supplements to the FAR ("HSAR"), as well as the DHS Acquisition Manual ("HSAM").
>
> - HSAM § 3007.102(b)(2) states that "[n]o solicitations may be issued, or funds transferred within or outside the Department until an acquisition plan (AP) has been completed and approved."[14]
>
> - HSAM § 3007.104 states that "acquisition planning should begin as soon as the agency need is identified."

---

[14] When the CBP issued the 2018 RFQ on January 19, 2018, the version of the HSAM that was in effect had been issued on December 29, 2017. In the December 29, 2017 version of the HSAM, HSAM § 3007.102(b) is reserved, and the section the protestor quotes in its motion for judgment on the administrative record does not appear to be included in the HSAM. The DHS subsequently issued revised versions of the HSAM on March 30, 2018, April 30, 2018, and June 29, 2018. In all three of the revised versions of the HSAM, HSAM § 3007.102(b) is reserved, and the section protestor quotes does not appear to be included in the revised versions of the HSAM.

- HSAM § 3019.501(c) requires that each DHS proposed acquisition exceeding the simplified acquisition threshold be reviewed by the CBP small business specialist prior to synopsizing the requirement and the results documented in the file.

(first alteration in original). ARC also argues that FAR Part 10 requires agencies to conduct market research, "particularly with respect to whether a particular acquisition can be performed by small businesses," prior to soliciting offers for acquisitions with an estimated value in excess of the simplified acquisition threshold.

ARC, citing to 13 C.F.R. § 125.2(c), further asserts that the SBA's regulations require that each agency must conduct market research to determine the type and extent of small business participation in an acquisition and, when an acquisition involves goods or services currently being performed by a small business, an agency must provide a written statement to the SBA thirty days prior to the issuance of a solicitation indicating why the proposed procurement would render small business participation unlikely. Additionally, ARC asserts that FAR § 19.502-2(b) requires that a federal agency set aside an acquisition when the agency has a reasonable expectation that at least two responsible small business concerns will submit offerors and an award can be made at a fair market price. ARC alleges that the CBP selected the FSS in an effort to "avoid the requirements of FAR Part 19, which states that '[s]mall business set-asides have priority over acquisitions using full and open competition.'" (quoting FAR § 19.203(e) (2018)). ARC states that FAR § 8.405-5 (2018) "exempts FSS orders from the preference programs of FAR Part 19," but ARC contends that FAR § 8.405-5

does not exempt FSS orders from the advance acquisition planning requirements of FAR Part 7 or the advance market research requirements of FAR Part 10, including such requirements as implemented by FAR Part 19. Such research must precede decisions whether to utilize the GSA Federal Supply Schedules ("FSS"), which NAICS code (and thus what size standard) is applicable to the procurement, or whether or not to set-aside an acquisition for small businesses. See e.g., FAR 8.404(c) ("Orders placed under a Federal Supply Schedule contract are not exempt from the development of acquisition plans (see subpart 7.1)"). Nor does FAR Part 8 exempt FSS orders from the advance acquisition planning requirements or market research requirements of the SBA regulations.

ARC also argues that the CBP's actions lacked a rational basis and violated "the applicable regulations and procedures provided above" because the CBP,

- Did not undertake any acquisition planning or market research prior to: (1) selecting FSS 48 as the contract type for the Procurement; (2) changing the small business size standard applicable to the Procurement; or (3) releasing the RFQ as an unrestricted procurement.

- Did not consult with OSBDU [sic] or the Agency's small business specialist prior to: (1) selecting FSS 48 as the contract type for the Procurement; (2) changing the small business size standard applicable to the Procurement; or (3) releasing the RFQ as an unrestricted procurement.

ARC argues that the undated First Market Research Report, the Second Market Research Report dated December 18, 2017, the undated 2018 Independent Government Cost Estimate, the December 5, 2017 and December 13, 2017 spreadsheets that Ms. Spangler sent to CBP contracting personnel, and the February 7, 2018 DHS Small Business Review Form "were prepared after the RFQ was issued and likely after ARC registered its complaint with the Agency regarding the RFQ being unrestricted." ARC asserts that "many of the facts and opinions expressed in both" the undated First Market Research Report and the Second Market Research Report dated December 18, 2017 "directly reflect responses to issues raised by ARC in its communications with the Agency on or about February 1, 2018 or during the GAO protest, both of which were *after* the [2018] RFQ was issued." (emphasis in original). ARC also contends that "Mr. Ohene's declaration is an admission that Tab 13 [the undated First Market Research Report] was flawed and that Tab 42 [the Second Market Research Report dated December 18, 2017] was not relied upon."

According to ARC, the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet "are misleading documents and are not trustworthy" because "these spreadsheets do not include an overview of every available NAICS Code under each SIN." ARC contends in its motion for judgment on the administrative record that:

The NAICS Codes under each of the SINs for the RFQ are as follows:

a. SIN 653-1: 484210 (Used Household and Office Goods Moving); 531210 (Offices of Real Estate Agents and Brokers); 531390 (Other Activities Related to Real Estate); and 541511 (Custom Computer Programming Services);

b. SIN 653-4: 484210 (Used Household and Office Goods Moving); 531210 (Offices of Real Estate Agents and Brokers); 531390 (Other Activities Related to Real Estate); and 541511 (Custom Computer Programming Services);

c. SIN 653-5: 484210 (Used Household and Office Goods Moving); 531210 (Offices of Real Estate Agents and Brokers); 531390 (Other Activities Related to Real Estate); and 541511 (Custom Computer Programming Services); and

d. SIN 653-7: 484210 (Used Household and Office Goods Moving).

ARC also notes that the December 5, 2017 spreadsheet sent from the GSA to the CBP "lists only one NAICS Code for each SIN" and that the December 13, 2017 spreadsheet sent from the GSA to the CBP lists only the following NAICS Codes for each SIN:

> a. SIN 653-1: NAICS Codes 531210 and 531190, with two businesses listed as small business certified.
>
> b. SIN 653-4: NAICS Codes 531390, 531210 and 541511, with two businesses listed as small business certified.
>
> c. SIN 653-5: NAICS Codes 531210 and 531190, with two businesses listed as small business certified.
>
> d. SIN 653-7: NAICS Code 484210, with nine business [sic] listed as small business certified.

ARC argues that "reliance on these documents [the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet] cannot be considered reasonable as they failed to reveal all relevant information regarding Schedule 48 and the relevant SINS."

Regarding the 2018 Independent Government Cost Estimate, ARC asserts that the document is "totally unverifiable" and does not constitute market research because the 2018 Independent Government Cost Estimate is undated and unsigned and Mr. Ohene only received the 2018 Independent Government Cost Estimate a few hours before issuing the solicitation.[15] Regarding the February 7, 2018 DHS Small Business Review Form, ARC argues that the CBP could not have relied on the February 7, 2018 DHS Small Business Review Form as "the basis for the Agency's decision not to set aside the Procurement for small businesses because the document was not created until after the issuance of the RFQ" on January 19, 2018.

---

[15] The court is not persuaded by ARC's argument that the 2018 Independent Government Cost Estimate was prepared after the 2018 RFQ was issued. In an email message dated December 8, 2017, Mr. Ohene informed Ms. Reeves that Ms. Reeves would need to update the 2017 Independent Government Cost Estimate that was prepared in connection with the 2017 RFQ to incorporate the updated pricing the CBP was planning on using in connection with the 2018 RFQ. According to the July 17, 2018 declaration signed by Mr. Ohene, "[a]fter having several discussions with Ms. Reeves on the values for the Independent Government Cost Estimate (IGCE), the IGCE was sent to me on January 19, 2018." The administrative record includes a January 19, 2018 email message from Ms. Reeves to Mr. Ohene, attached to which was the 2018 Independent Government Cost Estimate. The administrative record, therefore, indicates that CBP had been working on the 2018 Independent Government Cost Estimate as early as December 8, 2017, and that the 2018 Independent Government Cost Estimate was finalized prior to the issuance of the 2018 RFQ.

Defendant, however, argues that CBP has broad discretion when deciding whether to use the FSS to acquire employee relocation services. According to defendant, the CBP's June 19, 2017 Acquisition Plan identified benefits associated with using the FSS and "explained that the agency was not changing its acquisition strategy from the current relocation services contract because 'CBP received satisfactory services under both [prior] contracts [awarded in 2008 and 2014 respectively for relocation services].'" (alterations in original). Defendant contends that CBP was not required to draft an additional acquisition plan because "the acquisition vehicle did not change." Defendant also asserts that:

> In light of the preference for obtaining goods and services from FSS contractors, and the fact that CBP had successfully employed this approach on the current and previous contracts for procuring the same services, the agency's decision to continue this acquisition strategy was reasonable and in the best interests of the United States.

Defendant also argues that CBP was not required to "undertake market research to determine whether a small business set-aside was appropriate before purchasing goods or services through the FSS," and that CBP's decision to set aside prior procurements of employee relocation services does "not expand CBP's obligations under the current FSS solicitation." Defendant asserts that, "[e]ven if CBP chose to evaluate the procurement as a small business set-aside – as it had done in the past – no such set-aside could be made here because there was not at least two small businesses that could have submitted offers when CBP issued its RFQ in January 2018." According to defendant, the December 13, 2017 spreadsheet

> reflected the NAICS code for SIN 653-7 (NAICS 484210) that was used in the cancelled 2017 RFQ (and was in use during under the current contract), but for which the statement of work and pricing had changed significantly. The NAICS code for the 2018 RFQ was subsequently changed to 531210 to reflect "the higher estimated value of work to be performed under the NAICS relative to the other NAICS being utilized for this acquisition as supported by the Independent Government Cost Estimate." The GSA spreadsheet identified only Choice Relocation Management, LLC and Sibcy Cline Relocation Services, Inc. as "small" under NAICS code 531210. And in her December 5 email, Ms. Spangler informed Mr. Ohene that "Sibcy provided notification that it will not renew its option and will expire 3/17/18" and that "ReloDirect [aka 'Reliance Relocation Services'] has also provided notification that it is recertifying as large business." A review of the System for Award Management records showed that Reliance Relocation Services, Inc., dba Relo Direct and ARC were both identified as "other than small" under NAICS code 531210 at the time. The only small business that qualified under NAICS code 531210 was Choice Relocation.

(alteration in original; internal references omitted).

Regarding the SBA regulation cited by ARC, 13 C.F.R. § 125.2, defendant contends that the SBA regulation does not apply to the CBP's acquisition of employee relocation services under the FSS. Defendant relies on K-Lak Corp. v. United States, 98 Fed. Cl. 1, 6 (2011), as support for its position that the CBP did not have any obligation to comply with the requirements of 13 C.F.R. § 125.2 once the CBP decided to utilize the FSS to acquire employee relocation services.

The FAR defines acquisition planning as "the process by which the efforts of all personnel responsible for an acquisition are coordinated and integrated through a comprehensive plan for fulfilling the agency need in a timely manner and at a reasonable cost. It includes developing the overall strategy for managing the acquisition." FAR § 2.101 (2018). FAR Part 7 sets forth the policies and procedures a federal agency must follow when developing an acquisition plan. See FAR § 7.000(a) (2018). Acquisition planning should begin as soon as an agency identifies a need. FAR 7.104(a) (2018); see also HSAM § 3007.104(a) (2018) ("In accordance with FAR 7.104(a), acquisition planning should begin as soon as the agency need is identified."). FAR § 7.102 (2018) requires that an agency perform acquisition planning and conduct market research pursuant to FAR Part 10, as discussed below, for all acquisitions in order "to ensure that the Government meets its needs in the most effective, economical, and timely manner." FAR § 7.102; see also Magnum Opus Techs., Inc. v. United States, 94 Fed. Cl. 512, 545 (2010) ("FAR part 7 requires agencies to develop acquisition plans to ensure that the Government meets its needs in the most effective, economical, and timely manner." (citing FAR §§ 7.102-.103)). Provided there is no statutory or regulatory requirement to the contrary, an agency generally has broad discretion when determining whether a procurement strategy will meet the agency's needs in an effective, economical, and timely manner. See Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009) ("The Corps, like other federal procurement entities, has broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation." (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996); and Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958)).

The FAR defines market research as "collecting and analyzing information about capabilities within the market to satisfy agency needs." FAR § 2.101. FAR Part 10 "prescribes the policies and procedures for conducting market research to arrive at the most suitable approach to acquiring, distributing, and supporting supplies and services." FAR § 10.000 (2018). A federal agency must "[c]onduct market research appropriate to the circumstances" prior to soliciting offers for an acquisition with an estimated value exceeding the simplified acquisition threshold and must use the results of the agency's market research to determine "if sources capable of satisfying the agency's requirements exist." FAR § 10.001(a) (2018); see also Magnum Opus Techs., Inc. v. United States, 94 Fed. Cl. at 545 ("FAR part 10 requires agencies to conduct market research to determine the most suitable approach for acquiring goods and services." (citing FAR §§ 10.001-.002)). "The extent of market research will vary, depending on such factors as urgency, estimated dollar value, complexity, and past experience," but market research "should include" consideration of the "[s]ize and status of potential sources (see [FAR] Part 19 [(2018)])." FAR § 10.002(b) (2018).

FAR Part 19, titled "Small Business Programs," at FAR § 19.201(a) (2018) indicates that it is the policy of the federal government to "provide maximum practicable opportunities in its acquisitions" to small businesses. See FAR § 19.201(a). FAR § 19.501(c) requires that a contracting officer conduct market research, and, if the contracting officer decides not to set aside the acquisition for small businesses, the contracting officer must document why a small business set-aside is inappropriate. FAR § 19.501(c); see also Proxtronics Dosimetry, LLC v. United States, 128 Fed. Cl. 656, 680 (2016) (discussing the requirements of FAR Part 19 and stating that "[c]ontracting officers are required to 'review acquisitions to determine if they can be set aside for small business,' and must 'perform market research' before concluding that an acquisition should not be set aside for a small business" (quoting FAR § 19.501(c))), appeal dismissed (Fed. Cir. 2017). A contracting officer generally must set aside an acquisition for small businesses when there is a reasonable expectation that "[o]ffers will be obtained from at least two responsible small business concerns offering the products of different small business concerns" and "[a]ward will be made at fair market prices." See FAR § 19.502-2(b); see also Adams & Assocs., Inc. v. United States, 741 F.3d 102, 106 (Fed. Cir.) (stating that, under FAR Part 19, "[t]he Rule of Two requires the 'contracting officer shall set aside any acquisition over $150,000 for small business participation when there is a reasonable expectation that: (1) Offers will be obtained from at least two responsible small business concerns . . . ; and (2) Award will be made at fair market prices.'" (omission in original) (quoting FAR § 19.502-2(b))), reh'g en banc denied (Fed. Cir. 2014).

FAR § 8.404(a) (2018), however, states that FAR "Parts 13 (except 13.303-2(c)(3)), 14, 15, and 19 (except for the requirement at 19.202-1(e)(1)(iii)[16]) do not apply to BPAs or orders placed against Federal Supply Schedules contracts." FAR § 8.404(a); see also FAR § 38.101(e) (2018) (stating that FAR Part 19 does not apply to orders or blanket purchase agreements awarded under the FSS). Moreover, if an agency is unable to satisfy its requirements for a procurement from the list of mandatory sources in FAR § 8.002 (2018) and FAR § 8.003 (2018), "agencies are encouraged to consider satisfying requirements from or through the non-mandatory sources listed in paragraph (a) of this section," which includes blanket purchase agreements under the FSS, before considering "[c]ommercial sources (including educational and non-profit institutions) in the open market." FAR § 8.004 (2018). Although FAR Part 19 does not apply to acquisitions utilizing the FSS in accordance with FAR Part 8, acquisitions utilizing the FSS are "not exempt from the development of acquisition plans" under FAR Part 7. See FAR § 8.404(c)(1). Contracting Officers also "may, at their discretion," set aside a blanket purchase agreement placed under the FSS for small businesses. See FAR § 8.405-5.

In the above-captioned bid protest, the administrative record indicates that CBP identified its need for employee relocation services as early as March 2017. In an email message dated March 29, 2017, which was sent by Mr. Ischkum, a GSA Branch Chief,

---

[16] FAR § 19.202-1(e)(1)(iii) (2018) states that a contracting officer shall provide a copy of a proposed acquisition package to an SBA procurement center representative when the proposed acquisition is a consolidated or bundled requirement.

to Mr. Ohene and displayed a subject line of "F2017036219 Relocation Services," Mr. Ischkum states, "I saw her [Ms. Reeves'] APFS [Acquisition Planning Forecast System Number] # F2017036219 for relocation services. This is something you may easily be able to accomplish on the GSA Schedules program." In a March 30, 2017 email message from Mr. Ohene to Mr. Ischkum, Mr. Ohene stated that "[w]e plan to use GSA Schedule 48 Transportation, Delivery, and Relocation Solutions for the recompete. It was used successfully for the last acquisition." In response to questions received by CBP regarding the CBP's May 8, 2018 Request for Information, CBP indicated that NAICS Code 484210, titled "Used Household and Office Goods Moving," which has a small business size standard of $27,500,000.00, was to be the applicable NAICS Code for the acquisition of employee relocation services.

According to the CBP's Acquisition Plan dated June 19, 2017, the acquisition of employee relocation services "will be competed via GSA Relocation Services schedule holders." The CBP's Acquisition Plan stated that "[m]arket research conducted for this requirement showed that relocation services can be procured via GSA Schedule 48-Transportation, Delivery, and Relocation Solutions, which was created to assist federal agencies offering relocation benefits for employees and their families," and that SINs 653-1, 653-4, 653-5, and 653-7, which are listed on Schedule 48 of the FSS, satisfied the CBP's requirements. The CBP's June 19, 2017 Acquisition Plan also provided that:

> CBP can leverage the purchase of relocation services via the GSA schedule. The use of FAR Subpart 8.4 (Federal Supply Schedule) procedures significantly reduces acquisition lead time allowing CBP to more efficiently complete the procurement process for the relocation acquisition. In addition, small business set-asides are allowable under the schedule. While the award will not be an IDIQ award as it is not permitted for GSA Multiple Award Schedule (MAS) vehicles, a Blanket Purchase Agreement will be awarded that will significantly reduce time by allowing orders to be placed under it as needs arise.

Additionally, the CBP noted that it had received satisfactory results under the previous employee relocation contract and the current ARC contract, which was issued under Schedule 48 of the FSS.[17]

---

[17] As noted above, APA review is to be applied to an agency's decision based on the record the agency presents to the court, although the court may supplement the administrative record when omission of the supplemental material precludes effective judicial review. See AugustaWestland N. Am., Inc. v. United States, 880 F.3d at 1331-32; see also Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1380. ARC attached to its motion for judgment on the administrative record a July 25, 2018 declaration signed by Mr. William Mulholland, who states that he is the "Managing Member" of ARC. In the July 25, 2018 declaration, Mr. Mulholland focuses on an invoicing dispute experienced between ARC and CBP. ARC asserts that the declaration signed by Mr. Mulholland "directly challenges the facts asserted in these so-called Market Research Reports, demonstrating that such reports were flawed and likely created after ARC contacted the

On August 21, 2017, the CBP issued the 2017 RFQ, which was set-aside for small businesses and sought employee relocation services under GSA's "Relocation Services Schedule 48 SSIN 653." On August 22, 2017, CBP issued an amendment to the 2017 RFQ, which added SINs 653-1, 653-4, 653-5, and 653-7 to the 2017 RFQ. On August 23, 2017, Terri Shaffer, a GSA Program Analyst, sent an email message to CBP contracting personnel stating that the 2017 RFQ "included commercial pricing as an option for move management services" under SIN 653-7, and that the "recent change to the Schedule which is reflected in the attached process maps offers move management services through the Schedule in combination with the household goods moving services being managed under the terms, conditions, and pricing of the Centralized Household Goods Traffic Management Program (CHAMP)." On September 5, 2017, CBP issued a modification cancelling the 2017 RFQ.

Subsequently, according to a November 9, 2018 email from Ms. Shaffer of the GSA, Ms. Schaffer began "working closely with Iris [Reeves of CBP] on the requirements for your [the CBP's] BPA," and, as of November 9, 2017, Ms. Shaffer and Ms. Reeves were "nearing the final stretch" of completing a statement of work for the 2018 RFQ, which was ultimately issued on January 19, 2018. As with the 2017 RFQ, the 2018 RFQ seeks to use Schedule 48 of the FSS to acquire employee relocation services and identifies SINs 653-1, 653-4, 653-5, and 653-7 as the applicable SINs. Prior to the issuance of the 2018 RFQ, on December 5, 2017, Ms. Spangler, a GSA Contracting Officer, sent an email message to Mr. Ohene and Ms. Reeves that stated:

> To support your research please find attached a pricing sheet for the Schedule 48 employee relocation contracts. This sheet includes the NAICS for each SIN and contractor business size classification by SIN as of today.
>
> As you can see, Schedule 48 employee relocation contracts may include multiple NAICS with different business classifications. The Schedule COs made NAICS determinations for these contracts based on the preponderance of work to be performed under the contract at time of award.
>
> FAR 8.405-5(b) states that "Ordering activities should rely on the small business representations made by schedule contractors at the contract

_____

Government after release of the 2018 RFQ." Defendant argues that the court "should strike the declaration of William Mulholland" because "the declaration contains no information that is relevant to any of the issues being protested." The defendant is correct that, upon review, there appears to be no information necessary for the court's judicial review in the above-captioned bid protest included in Mr. Mulholland's declaration. The court, therefore, declines to supplement the administrative record with the declaration signed by Mr. Mulholland. Mr. Mulholland's offered additional information regarding an invoicing dispute between ARC and CBP does not alter the court's conclusion that CBP adequately engaged in acquisition planning and conducted market research prior to issuing the 2018 RFQ.

level." However, in situations where a MAS contract includes multiple NAICS, the ordering CO's are responsible for assigning the order level NAICS which best corresponds to the work being performed. The order level CO should be re-certifying businesses at the order level per SBA at 71 Federal Register 220 (November 15, 2006), Page 66439. Due to the fact that a contractor's business size may be different at the MAS level from the Ordering Level, with regards to schedule SB set-asides competitors have an avenue for business size protest through the ordering CO.

I'm hoping the attachment will provide the documentation needed for your market research and resulting decision for acquisition strategy.

Ms. Spangler also informed Ms. Reeves and Mr. Ohene that Sibcy Cline Relocation Services informed GSA that Sibcy Cline Relocation Services "will not renew its option and will expire 3/17/18," which was reflected in the December 5, 2017 spreadsheet. On December 13, 2017, Ms. Spangler sent to Ms. Reeves and Mr. Ohene an updated spreadsheet that "was updated to correct NAICS codes & add comments on expiration dates." As the parties have stipulated, Ms. Spangler's December 13, 2017 spreadsheet

listed the following NAICS Codes for each SIN:

SIN 653-1: NAICS Codes 531210 and 531190, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-4: NAICS Codes 531390, 531210 and 541511, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-5: NAICS Codes 531210 and 531190, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-7: NAICS Code 484210, with nine business listed as small business certified: American Relocation Connections, Choice Relocation Management, Reliance Relocation Services, Sibcy Cline Relocation Services, TRF Global Mobility, Life International Companies, Move Management Center, Relocation Management Worldwide, and Weleski Transfer.

Based on the December 13, 2017 spreadsheet and Sibcy Cline Relocation Services' statement that it "will not renew its option and will expire 3/17/18," the only certified small business under NAICS Codes 531210, 531190, and 541511 was Choice Relocation Management, although, according to the December 13, 2017 spreadsheet, there were

seven certified small businesses under NAICS Code 484210.[18] The December 5, 2017 spreadsheet and December 13, 2017 spreadsheet also provided a "Rate Comparison" among all of the vendors listed under each SIN.

According to the undated First Market Research Report, CBP then determined that the applicable NAICS Code for the 2018 RFQ was NAICS Code 531210, titled "Offices of Real Estate Agents and Brokers," rather than NAICS Code 484210, titled "Used Household and Office Goods Moving," which the CBP utilized for the 2017 RFQ. The undated First Market Research Report stated:

GSA schedule 48-Transportation, Delivery, and Relocation Solutions vehicle is able to meet this requirement based on market research. Schedule 48 was created to assist federal agencies with respect to relocation services. The schedule contains the following applicable SINs/NAICS for the CBP Relocation Services acquisition:

SIN 653-1, Relocation Services Package (Homesale Assistance) NAICS 531210 & 531390
SIN 653-4, Additional Services NAICS 531210 & 531390
SIN 653-5, Agency Customization Service NAICS 531210 & 531390
SIN 653-7, Move Management Services NAICS 484210

The CBP Relocation acquisition encompasses the above SINs/NAICS. Given the multiple NAICS associated with the above reference [sic] SINs, the applicable NAICS at the order level for the preponderance of work ($ value) to be performed under the resultant contract is NAICS 531210 (Office of Real Estates and Brokers). NAICS 531210 is being utilized given the higher estimated value of work to be performed under the NAICS relative to the other NAICS being utilized for this acquisition as supported by Independent Government Cost Estimate.

Thereafter, on January 19, 2018, CBP issued the 2018 RFQ as an unrestricted procurement, and, on February 5, 2018, CBP issued an amendment to the 2018 RFQ, which indicates that NAICS Code 531210 is the applicable NAICS Code for the 2018 RFQ.

Contrary to ARC's position, the administrative record indicates that CBP did undertake acquisition planning and market research prior to selecting the FSS as the method for obtaining employee relocation services for the 2017 RFQ, as well as additional acquisition planning and market research prior to issuing the 2018 RFQ. As discussed above, the email messages exchanged between Mr. Ohene and Mr. Ischkum indicate

---

[18] Reliance Relocation Services, which is listed as a small business under NAICS Code 484210 in the December 5, 2017 and December 13, 2017 spreadsheets, had informed the GSA, which had informed CBP, that Reliance Relocation Services was going to be recertifying as a "large business."

that the CBP identified its upcoming need for employee relocation services as early as March 2017. The CBP's June 19, 2017 Acquisition Plan indicates that CBP had previously, successfully used the FSS to acquire employee relocation services, noted that Schedule 48, which is titled "Transportation, Delivery and Relocation Solutions," was "created to assist federal agencies offering relocation benefits for employees and their families," stated that the SINs listed on Schedule 48 of the FSS covered the CBP's requirements, stated that "[m]arket research conducted for this acquisition can be procured via GSA Schedule 48," and reasoned that using the FSS permitted the CBP to complete its procurement process in an efficient manner, all of which suggested to the agency that the FSS was an effective method for acquiring employee relocation services. Although the CBP's June 19, 2017 Acquisition Plan was created in connection with the 2017 RFQ, which requested employee relocation services under SINs 653-1, 653-4, 653-5, and 653-7, the reasoning in the June 19, 2017 Acquisition Plan directly supports the use of Schedule 48 of the FSS for the 2018 RFQ, which also requested employee relocation services under SINs 653-1, 653-4, 653-5, and 653-7, albeit with revised pricing and a revised statement of work for SIN 653-7. See FAR § 10.002(b)(1) ("The contracting officer may use market research conducted within 18 months before the award of any task or delivery order if the information is still current, accurate, and relevant."). As indicated in Ms. Reeves' December 8, 2017 email message to Mr. Ohene, the CBP anticipated that its "estimates on our volumes [for employee relocation services] for the next 4 years should still be the same" for the 2018 RFQ and that CBP's 2018 RFQ is requesting "the same services that we previously had," although, as noted in Mr. Ohene's December 8, 2017 response, vendors would not be submitting pricing for the shipment of Household Goods because "CHAMP will be handling this." ARC also states that "there is no fundamental change to the services being acquired" under the 2018 RFQ, but that the CBP "simply changed the pricing the contractor could charge for move management services, i.e., such charges were limited to the CHAMP tariffs."

The June 19, 2017 Acquisition Plan was developed less than seven months before CBP issued the 2018 RFQ on January 19, 2018, and ARC has not identified any information in the administrative record indicating that Schedule 48 of the FSS, which is titled "Transportation, Delivery and Relocation Solutions," had become an ineffective vehicle for the CBP's procurement of employee relocation services during that time period. Under the existing regulations, the CBP had broad discretion when selecting which method of contracting to utilize for the acquisition, and the administrative record indicates that the CBP engaged in acquisition planning prior to selecting Schedule 48 of the FSS to acquire employee relocation services, as the CBP had done in the past when acquiring employee relocation services, and that CBP had a rational basis for selecting the FSS vehicle. See Tyler Constr. Grp. v. United States, 570 F.3d at 1334 (stating that an agency "has broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation" (citing E.W. Bliss Co. v. United States, 77 F.3d at 449; and Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958)); see also Che Consulting, Inc. v. United States, 125 Fed. Cl. 234, 245 (2016) (indicating that an agency had broad discretion in selecting the method of contracting to use and stating that the agency "had the right to award the contract under the FSS program"); K-Lak Corp. v. United States, 98 Fed. Cl. at 6 ("[A] procuring agency is free to

decide whether to use the FSS without regard to whether the requirement has been or could be met through a set-aside or preference program."). Indeed, the protestor, ARC, indicated at the September 5, 2018 oral argument that ARC was not asserting that it was improper for the CBP to utilize the FSS to procure employee relocation services, but only that the CBP's decision to utilize the FSS lacked a rational basis because ARC failed to perform acquisition planning and market research prior to selecting the FSS as the method for obtaining employee relocation services, which is not supported by the administrative record.

Regarding ARC's allegation that the CBP did not perform any market research prior to "changing the small business size standard applicable to the Procurement" or "releasing the RFQ as an unrestricted procurement," the administrative record indicates that Ms. Spangler of the GSA sent CBP contracting personnel a detailed spreadsheet on December 5, 2017 and an updated, detailed spreadsheet on December 13, 2017 identifying vendors under SINs 651-1, 653-4, 653-5, and 653-7 and indicating whether each vendor identified in the spreadsheets was certified as a small business or an other than small business for certain NAICS Codes applicable to the four SINs.

The FAR requires that CBP "[c]onduct market research appropriate to the circumstances" to determine "if sources capable of satisfying the agency's requirements exist," and, the agency, including Mr. Ohene and Ms. Reeves of the CBP, had discretion when determining the extent and the nature of the market research to conduct prior to issuing the 2018 RFQ. See Sigmatech, Inc. v. United States, 136 Fed. Cl. 346, 352 (2018) ("FAR Part 10 provides that an agency has substantial discretion in determining how much and what type of market research is 'appropriate to the circumstances' for the purpose of '[d]etermining if sources capable of satisfying the agency's requirements exist.'" (alteration in original) (quoting FAR § 10.001(a)) (citation omitted)); see also Advanced Am. Constr., Inc. v. United States, 111 Fed. Cl. 205, 226 (2013) ("[T]he agency enjoys substantial discretion in determining how much and what type of market research is 'appropriate to the circumstances' for the purpose of '[d]etermin[ing] if sources capable of satisfying the agency's requirements exist.'" (second and third alterations in original) (quoting FAR § 10.001(a))); Assessment & Training Sols. Consulting Corp. v. United States, 92 Fed. Cl. 722, 731 (2010) ("The court agrees with defendant that the Contracting Officer had discretion under the relevant regulations to conduct market research 'appropriate to the circumstances.'" (quoting FAR § 10.001(a))). The work and review evidenced by the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet acquired from Ms. Spangler of the GSA satisfied CBP's obligation to undertake market research appropriate to the circumstances in order to determine whether there were sources capable of satisfying the CBP's requirements under Schedule 48 of the FSS and the agency's actions in this regard were not arbitrary and capricious. Both spreadsheets indicate that there were multiple vendors potentially available under Schedule 48 capable of providing to the CBP the services listed under SINs 651-1, 653-4, 653-5, and 653-7. According to FAR § 10.002(b)(2), market research may include "[c]ontacting knowledgeable individuals in Government and industry regarding market capabilities to meet requirements," which, is what CBP did when it obtained the December 5, 2017 spreadsheet and December 13, 2017 from Ms. Spangler, GSA's "CO who oversees the

relocation contracts" and "manages these [relocation] contracts." See FAR § 10.002(b)(2)(i). The undated First Market Research Report indicates that CBP also conducted market research by reviewing "IBIS World, a renowned magazine that publishes the largest collection of reports, analysis, statistics and future trends in various industries," which the undated First Market Research Report indicates "provides a positive assessment of the relocation services commercial market place." See FAR § 10.002(b)(2)(vii) (stating that market research may include "[r]eviewing catalogs and other generally available product literature published by manufacturers, distributors, and dealers or available on-line"). FAR Part 10 states that market research "should include" consideration of the "[s]ize and status of potential sources (see part 19)," while also noting that the "extent of market research will vary depending on such factors as urgency, estimated dollar value, complexity, and past experience." See FAR § 10.002(b)(1)(vii). Although FAR § 19.501(c) states that the "contracting officer shall perform market research and document why a small business set-aside is inappropriate when an acquisition is not set aside for small business," FAR Part 19 does not apply to blanket purchase agreements placed under the FSS. See FAR § 8.404(a) (stating that FAR Part 19 does not apply to blanket purchase agreements placed under the FSS); see also K-Lak Corp. v. United States, 98 Fed. Cl. at 2 n.3; Navarro Research & Eng'g, Inc. v. United States, 94 Fed. Cl. 224, 233 (2010) ("FAR Part 8.4 expressly exempts FSS contracts from the requirements of Parts 13, 14, 15, and 19." (citing FAR § 8.404(a))).

The court is not persuaded by ARC's argument that "[c]learly Mr. Ohene, or others at the Agency, had made a decision to remove the acquisition from the small business program before they had made contact with [Ms.] Spangler. In fact, it appears a decision may have been made in November of 2017." In an attempt to support its position, ARC cites to a November 28, 2017 email message in a series of email messages between Mr. Ohene and Ms. Reeves and to a December 6, 2017 email message from Mr. Ohene to Ms. Spangler. In the November 2017 email messages between Ms. Reeves and Mr. Ohene, on November 16, 2017, Mr. Ohene asked Ms. Reeves to send him "some names of Relocation Vendors that showed good capability and can be used as part our Market Research." Ms. Reeves responded on November 22, 2017 by sending Mr. Ohene the list of five "vendors that we identified when preparing for the DHS Relocation Service Contract." Subsequently, on November 28, 2017, Ms. Reeves sent another email message to Mr. Ohene, which stated "[s]till on track to getting you the SOW by COB Thursday [November 30, 2017]. Is there anything else that I should be working on? If so, could you provide me with a list of expected deliverables so I can plan accordingly." That same day, on November 28, 2017, Mr. Ohene sent an email message to Ms. Reeves stating:

Thanks for the information. I look forward to the SOW. We will have to tweak some of the initial documents used in FY17 due to the change in the acquisition strategy.

- Market Research
- Acquisition Plan

> I will work on the above two and send them to you. In addition, we will have to work on the Evaluation Factors that will be used to make the award. Terri provided a Sample Evaluation Factors that we can tweak for our acquisition. We may also need to tweak the attached Independent Government Cost Estimate. According to Terri, we will be paying fees to the Contractor who will be coordinating the HHG shipping with a CHAMP carrier so our IGCE needs to reflect the estimated fee and not the actual HHG amount as it is currently listed in the attached. We can use an average of fees off the GSA Relocation Schedule for our IGCE.

Mr. Ohene's November 28, 2017 email message, including Mr. Ohene's vague reference to a "change in the acquisition strategy," does not specifically indicate that, as of November 28, 2017, CBP "had made a decision to remove the acquisition from the small business program," as ARC asserts, but only that Mr. Ohene anticipated that CBP would have to perform additional research related to CBP's upcoming acquisition of employee relocation services because of the change in pricing.

In the December 6, 2017 email message, cited by protestor in an attempt by ARC to demonstrate that CBP had made a decision to release the procurement as an unrestricted procurement prior conducting market research, Mr. Ohene is responding to Ms. Spangler's December 5, 2017 email messages, in which Ms. Spangler sent to CBP contracting personnel the December 5, 2017 spreadsheet and provided additional information about the notifications received from Sibcy Cline Relocation Services and Reliance Relocation Services. In the December 6, 2017 email message, Mr. Ohene states:

> Thanks for the pricing sheet and the additional information regarding Sibcy and Relo Direct. We plan on opening up the acquisition to both large and small business probably - [redacted] vendors based on market research information. As we move further in the acquisition, I will let you know if anything else is needed.

As of December 6, 2017, CBP had conducted market research that indicated that Schedule 48 of the FSS was an efficient tool for CBP's upcoming acquisition of employee relocation services, which was documented in the June 19, 2017 Acquisition Plan, and CBP was in possession of the December 5, 2017 spreadsheet indicating whether vendors were certified as a small business or as an other than small business under NAICS Codes associated with SINs 653-1, 653-4, 653-5, and 653-7. Mr. Ohene only states in his December 6, 2017 email message to Ms. Spangler that CBP "probably" will issue the 2018 RFQ to "both large and small business," which Mr. Ohene states is based on "market research information." The CBP then received the December 13, 2017 spreadsheet from Ms. Spangler, and the undated First Market Research Report, which Mr. Ohene indicates in his July 17, 2018 declaration was created on or about December 18, 2017, states that, "based on information obtained through the GSA Contracting Officer in charge of Relocation Program, there was a not reasonable expectation that CBP would receive three small business proposals needed for maximum competition," as the only business

identified in the December 5, 2017 and the December 13, 2017 spreadsheet as being a certified small business under NAICS Code 531210 was Choice Relocation Management.

ARC also argues that the CBP violated the SBA regulation at 13 C.F.R. § 125.2(c)(2), which states that "[e]ach agency, as part of its acquisition planning, must conduct market research to determine the type and extent of foreseeable small business participation in the acquisition," and also that, during the market research phase, a procuring agency "must consult with the applicable PCR [SBA Procurement Center Representative] (or if a PCR is not assigned to the procuring activity, the SBA Office of Government Contracting Area Office serving the area in which the buying activity is located) and the activity's Small Business Specialist." ARC further asserts that the CBP violated 13 C.F.R. § 125.2(c)(3)(iv), which states that, when a requirement includes goods or services currently being performed by a small business, an agency must provide to the SBA a written statement at least thirty days prior to issuing a solicitation when a proposed acquisition strategy "[i]ncludes in its description goods or services the magnitude of the quantity or estimated dollar value of which would render small business prime contract participation unlikely." Defendant, however, asserts that CBP did not have to comply with 13 C.F.R. § 125.2(c) because CBP had selected the FSS as the acquisition vehicle for its procurement. Defendant argues that "[w]e do not dispute that orders issued against a multiple award schedule – including the solicitation at issue here – are contemplated within certain provisions set forth at 13 C.F.R. § 125.2. But none of those provisions affect this procurement." According to defendant, "the only provision of the regulation that speaks directly to this procurement is found at [13 C.F.R.] § 125.2(e)(6)(i), which gives the contracting officer 'the authority to set-aside orders against Multiple Award Contracts that were competed on a full and open basis.'" (footnote omitted) (quoting 13 C.F.R. § 125.2(e)(6)). Defendant cites to <u>K-Lak Corp. v. United States</u>, 98 Fed. Cl. at 6, and asserts in a parenthetical that, "because the agency chose to use the FSS after the incumbent's contract expired, it was not required to comply with Rule of Two or any of the other regulations applicable to small businesses." According to defendant, 13 C.F.R. § 125.2(c) is "inapplicable" to the CBP's procurement and "irrelevant" to ARC's protest, as 13 C.F.R. § 125.2(c) "only applies to acquisitions at the Multiple Award Contract level" and not "to Part 8.4 task orders."

In <u>K-Lak Corp. v. United States</u>, the United States Court of Federal Claims reviewed a protestor's challenge to an agency's decision to "procure credit reports using the Federal Supply Schedule ('FSS') rather than continue its procurement pursuant to the requirement it had set aside for small businesses in 2007." See <u>K-Lak Corp. v. United States</u>, 98 Fed. Cl. at 1. The court in <u>K-Lak Corp.</u> stated that the protestor had "not cited and the court has not found any statutory or regulatory support for the plaintiff's underlying contention that, where the required goods or services are available from the FSS, the FAR or SBA rules mandate that an agency continue to procure the goods or services as a small business set-aside." <u>Id.</u> at 6. The court in <u>K-Lak Corp.</u> explained that the "language in FAR 8.404(a), FAR 38.101(e), and FAR 19.502-1(b), quoted above, makes it plain that the small business set aside rules relied upon by the plaintiff do not apply to purchases under the FSS." <u>Id.</u> According to the court in <u>K-Lak Corp. v. United States</u>, "because the Air Force decided to use the FSS after K-LAK's [the protestor's] contract expired, the Air

Force was not required to comply with the Rule of Two or any of the other regulations applicable to small businesses that the plaintiff relies upon in its complaint and subsequent briefing." Id. The court in K-Lak Corp. v. United States, however, did not specifically address or cite the SBA regulation cited by ARC, 13 C.F.R. § 125.2, but indicated that the "Rule of Two" is inapplicable to procurements under the FSS, which is consistent with this court's conclusion that, when issuing an order under the FSS, an agency is not required to set aside a procurement for small businesses even when there is a reasonable expectation that at least two small businesses will submit offers and that award will be made at a fair market price, as discussed above. Furthermore, the SBA regulation cited by ARC, 13 C.F.R. § 125.2, has been updated multiple times since the court in K-Lak Corp v. United States issued its opinion on March 3, 2011, and the requirements cited by ARC were not in the version of 13 C.F.R. § 125.2 in effect on March 3, 2011.[19]

The regulations cited by ARC stem from the Small Business Jobs Act of 2010, Pub. L. No. 111-240, 124 Stat. 2504 (the Jobs Act), which was signed into law on September 27, 2010. Section 1331 of the Jobs Act, titled "RESERVATION OF PRIME CONTRACT AWARDS FOR SMALL BUSINESSES," amended the statute at 15 U.S.C. § 644 "by adding at the end" the following language:

> (r) MULTIPLE AWARD CONTRACTS.--Not later than 1 year after the date of enactment of this subsection, the Administrator for Federal Procurement Policy and the Administrator [of the SBA], in consultation with the Administrator of General Services, shall, by regulation, establish guidance under which Federal agencies may, at their discretion--
>
> > (1) set aside part or parts of a multiple award contract for small business concerns, including the subcategories of small business concerns identified in subsection (g)(2);
> >
> > (2) notwithstanding the fair opportunity requirements under section 2304c(b) of title 10, United States Code, and section 303J(b) of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 253j(b)), set aside orders placed against multiple award contracts for small business concerns, including the subcategories of small business concerns identified in subsection (g)(2); and
> >
> > (3) reserve 1 or more contract awards for small business concerns under full and open multiple award procurements, including the subcategories of small business concerns identified in subsection (g)(2).

---

[19] As discussed below, the requirements cited by ARC were implemented and incorporated into 13 C.F.R. § 125.2 on October 2, 2013, with an effective date of December 31, 2013. See Acquisition Process: Task and Delivery Order Contracts, Bundling, Consolidation, 78 Fed. Reg. 61,114 (Oct. 2, 2013).

(capitalization in original).

On November 2, 2011, the Department of Defense (DoD), the GSA, and the National Aeronautics and Space Administration (NASA) issued an interim rule amending the FAR to implement Section 1331 of the Jobs Act. See Federal Acquisition Regulation; Set-Asides for Small Business, 76 Fed. Reg. 68,032, 68,032 (Nov. 2, 2011). The interim rule noted that the SBA and the Office of Federal Procurement Policy have requested "that DoD, GSA, and NASA publish this interim rule in order to provide agencies with guidance that they can use in taking advantage of this important tool, while SBA completes the drafting and coordination of a proposed rule that will set forth more specific guidance." Id. at 68,033. The interim rule stated that it amended:

- FAR subpart 8.4 to make clear that order set-asides may be used in connection with the placement of orders and blanket purchase agreements under Federal Supply Schedules;

- FAR subpart 12.2 to acknowledge that discretionary set-asides may be used if placing an order under a multiple-award contract;

- FAR subpart 16.5 to acknowledge that set-asides may be used in connection with the placement of orders under multiple-award contracts, notwithstanding the requirement to provide each contract holder a fair opportunity to be considered;

- FAR part 19 to add a new section authorizing agencies to (1) use set-asides under multiple-award contracts— including set-asides for small businesses participating in the small business programs identified in FAR 19.000(a)(3); and (2) reserve one or more contract awards under multiple-award contracts for small businesses, including any of the socio-economic groups; and

- FAR subpart 38.1 to add a reference to FAR 8.405–5 to make clear that order set-asides may be used in connection with the placement of orders and blanket purchase agreements under Federal Supply Schedules.

Id.

On May 16, 2012, the SBA published a proposed rule to amend the SBA's regulations in order to implement Section 1331 of the Jobs Act. See Acquisition Process: Task Order and Delivery Order Contracts, Bundling, Consolidation, 77 Fed. Reg. 29,130, 29,130 (proposed May 16, 2012). In the SBA's proposed rule, the SBA stated:

[T]he SBA has proposed to define the term multiple award contract to mean: (1) A multiple award schedule contract issued by the GSA (e.g., GSA Federal Supply Schedule contract) or agencies granted Multiple Award Schedule contract authority by GSA (e.g., Department of Veterans Affairs)

as described in FAR part 38 and subpart 8.4; (2) a multiple award task-order or delivery-order contract issued in accordance with FAR subpart 16.5, including Governmentwide acquisition contracts; and (3) any other IDIQ contract entered into with two or more sources pursuant to the same solicitation. SBA notes that although it is proposing to include a specific reference to GSA Schedules as part of the definition of multiple award contract, the proposed rule is not meant to infringe upon GSA's authority for the MAS Program pursuant to 41 U.S.C. 152(3).

See id. at 21,139. Under a heading labeled "Order set-asides," the SBA stated, in full:

> The proposed rule also lays out processes, at [13 C.F.R.] § 125.2(e)(6), that permit agencies, when awarding multiple award contracts pursuant to full and open competition without either partial set-asides or reserves, to make commitments to set aside orders, or preserve the right to consider set-asides, when the rule of two is met. The contracting officer would state in the solicitation and resulting contract what process would be used—e.g., automatic application of set-asides or preservation of right to consider set-asides. These alternatives maximize agencies' flexibility in exercising their discretion to determine when and how best to use set-asides under multiple award contracts.

> Finally, the proposed rule states at [13 C.F.R.] § 125.1(k) that the term "multiple award contract" includes MAS contracts issued by GSA—or agencies to which GSA has delegated authority. This clarification is consistent with the interim FAR rule which, as explained above, states (at FAR 8.405–5(a)) that order set-asides may be used in connection with the placement of orders and BPAs under MAS contracts. The MAS Program provides an important contracting gateway to help agencies reach small businesses. It is the largest acquisition program in the Federal Government built on MACs; nearly $40 billion in sales went through the MAS contracts managed by GSA in FY 2011. As a general matter, SBA anticipates that Schedule orders would be conducted using a modified version of the process set forth at [13 C.F.R. §] 125.2(e)(6). A contracting officer, at his or her discretion, may set aside a Schedule order by including language in its request for quote that the order is a set aside for small business and only quotes submitted by a small business concern (or a specific category of small businesses) will be accepted. GSA's Federal Acquisition Service is modifying its schedules to include all appropriate set-aside clauses and has developed both written and webinar training for agency customers. For additional information on using setasides [sic] on orders, agencies should go to *www.gsa.gov.*

Id. at 29,131 (emphasis in original). Under a heading labeled "Documentation of consideration given to section 1331 authorities," the SBA stated:

> Although these documentation requirements are spelled out in the proposed rule, SBA does not view them as creating new burdens for agency contracting officers. To the contrary, SBA believes these requirements reinforce responsibilities which serve the purpose of increasing opportunities for small businesses that already are in the FAR, such as FAR 19.501(c), which states, as a general matter, that "the contracting officer shall perform market research and document why a small business set-aside is inappropriate when an acquisition is not set aside for small business."

Id. When discussing the proposed regulations at 13 C.F.R. § 125.2(b)-(c), regarding the SBA's responsibilities and the procuring agency's responsibilities in acquisition planning, the SBA does not appear to mention orders placed against the FSS, but, rather, discusses a procuring agency's responsibilities when issuing the solicitation underlying a multiple award contract. See id. at 29,141-42. When discussing the proposed rule at 13 C.F.R. § 125.2(e), the SBA discusses requirements applicable to a "multiple award contract," as well as to "set-aside orders issued against a multiple award contract." See id. at 29,142. Regarding the SBA's Procurement Center Representatives, the SBA stated that the "SBA's procurement center representatives (PCRs) may review acquisitions involving the award of multiple award contracts or orders issued against such contracts that are not set-aside for small businesses or where no awards have been reserved for small businesses." Id. at 29,132.

On October 2, 2013, the SBA issued its final rule amending the "SBA's regulations to establish policies and procedures for setting aside, partially setting aside and reserving Multiple Award Contracts for small business concerns" and for "establishing policies and procedures for setting aside task and delivery orders for small business concerns under Multiple Award Contracts." See 78 Fed. Reg. at 61,114. In issuing the final rule, the SBA stated:

> Of particular note, the final rule, like the proposed rule, preserves the discretion that section 1331 vests in agencies to decide whether or not to use any of the enumerated set-aside and reserve tools. There is nothing in the rule that compels an agency to award a multiple award contract with a partial set-aside, contract reserve, or contract clause that commits (or preserves the right) to set aside orders when the "rule of two" is met. The rule only requires that agencies consider these tools before awarding the multiple award contract and, if they choose not to use any of them, document the rationale. Agencies have the discretion to forego using the section 1331 tools even if the requirements could be met; they simply need to explain how their planned action is consistent with the best interests of the agency and the agency's overarching responsibility to provide maximum practicable opportunities for small businesses . . . .

In sum, this final rule will provide adequate tools and assurances that agencies will maximize small business participation on multiple award contracts without compromising the greater flexibility and leverage agencies have in conducting procurements through multiple award contracts.

Id. at 61,116. In a section titled "GSA Multiple Award Schedule Program," the SBA stated that the "SBA believes that contracting officers must give appropriate consideration to the utilization of small businesses during acquisition planning" and that "[a]gencies realize they are able to use the GSA MAS program for strategic sourcing purposes while at the same time setting aside orders for small business to maximize participation of small businesses in Federal contracting." See id. at 61,125. The SBA also stated that the "SBA has clarified in the final rule that PCRs will only review multiple award contracts where the agency has not set-aside all or part of the acquisition or reserved the acquisition for small businesses." Id. The SBA, again, discussed the pre-existing requirement to conduct market research concerning potential small business participation at FAR § 19.501(c) and stated:

The majority of respondents believe, and SBA agrees, that the contracting officer should be required to document the decision to not use one of the authorities and that this is not a burden on contracting officers since they are always required to consider the use of small businesses during acquisition planning. In addition, we believe that the rule needs to specifically address this fact in order to avoid any confusion on this issue.

Id. at 61,124-25.

The SBA regulation at 13 C.F.R. § 125.2 states that "these regulations apply to all types of Federal Government contracts, including Multiple Award Contracts, and contracts for architectural and engineering services, research, development, test and evaluation." 13 C.F.R. § 125.2(a); see also Edmond Sci. Co., B-410179 et al., 2014 WL 6199127, at *5 (Comp. Gen. Nov. 12, 2014) ("Subsection 125.2(a) states that the regulations apply to multiple award contracts."). The regulation at 13 C.F.R. § 125.1 states that the term "Multiple Award Contract" includes a "Multiple Award Schedule contract issued by GSA (e.g., GSA Schedule Contract) or agencies granted Multiple Award Schedule contract authority by GSA (e.g., Department of Veterans Affairs) as described in FAR part 38 and subpart 8.4." The definition of "Multiple Award Contract" provided in 13 C.F.R. § 125.1 does not identify an order issued against an existing "Multiple Award Contract," such as the FSS. See 13 C.F.R. § 125.1 (2018). The SBA regulation at 13 C.F.R. § 125.1 defines contract as follows:

Contract, unless otherwise noted, has the same definition as set forth in FAR 2.101 (48 U.S.C. 2101) and includes orders issued against Multiple Award Contracts and orders competed under agreements where the execution of the order is the contract (e.g., a Blanket Purchase Agreement (BPA), a Basic Agreement (BA), or a Basic Ordering Agreement (BOA)).

The SBA definition immediately above appears inconsistent with the history of 13 C.F.R. § 125.2, which does not indicate that the SBA intended for the regulation at 13 C.F.R. § 125.2(c) to apply to orders placed against the FSS. The SBA stated when issuing its final rule that the final rule "only requires that agencies consider these tools [in Section 1331 of the Jobs Act] before awarding the multiple award contract and, if they choose not to use any of them, document the rationale," which indicates that the SBA intended to promulgate requirements applicable to solicitations at the multiple award contract level, but not at the order level. See 78 Fed. Reg. at 61,116. In issuing the proposed rule, the SBA stated that the "Schedule orders would be conducted using a modified version of the process set forth at [13 C.F.R. §] 125.2(e)(6)," which, in the current version of 13 C.F.R. § 125.2(e)(6), is titled "Set-aside of orders against Full and Open Multiple Award Contracts." See 13 C.F.R. § 125.2(e)(6). Under 13 C.F.R. § 125.2(e), titled "Multiple Award Contract," "[t]he procuring agency contracting officer must document the contract file and explain why the procuring agency did not partially set-aside or reserve a Multiple Award Contract, or set-aside orders issued against a Multiple Award Contract, when these authorities could have been used," which is consistent with the SBA's statement that its final rule "only requires that agencies consider these tools [in Section 1331 of the Jobs Act] before awarding the multiple award contract and, if they choose not to use any of them, document the rationale." See 13 C.F.R. § 125.2(e)(1)(iii). Under 13 C.F.R. § 125.2(e)(2), titled "Total Set-aside of Multiple Award Contracts," the contracting officer also "must conduct market research to determine whether the 'rule of two' can be met. If the 'rule of two' can be met, the contracting officer must follow the procedures for a set-aside set forth in paragraph (f) of this section." See 13 C.F.R. § 125.2(e)(2)(i). Under 13 C.F.R. § 125.2(e)(6), titled "Set-aside of orders against Full and Open Multiple Award Contracts," the subsection which the SBA indicated to be the section relevant to setting aside schedule orders, there is no requirement that an agency conduct market research regarding the extent of potential small business participation prior to setting aside a schedule order. Rather, 13 C.F.R. § 125.2(e)(6)(i) states that "the contracting officer has the authority to set-aside orders against Multiple Award Contracts that were competed on a full and open basis." See 13 C.F.R. § 125.2(e)(6)(i).

Moreover, interpreting the requirements in 13 C.F.R. § 125.2(c) to apply to orders placed under the FSS would be inconsistent with the FAR. In both the proposed rule and final rule, the SBA stated that the requirement to conduct market research concerning potential small business participation, which is reflected in the current version of 13 C.F.R. § 125.2(c)(2), was not a new requirement because FAR § 19.501(c) already required contracting officers to conduct market research concerning small businesses. The requirement cited by ARC at 13 C.F.R. § 125.2(c)(3)(iv) is substantially similar to the regulation at FAR § 19.202-1(e)(1) (2018), as both regulations require that a written statement be sent to an SBA Procurement Center Representative when a small business is currently performing a requirement for goods or services and the magnitude of the quantity or estimated dollar value of a proposed acquisition strategy involving those goods or services renders small business participation unlikely. As discussed above, however, FAR § 8.404(a) explicitly states that the requirements in FAR Part 19 do not apply to orders placed under the FSS. See FAR § 8.404(a). According to FAR § 38.101:

When establishing Federal Supply Schedules, GSA, or an agency delegated that authority, is responsible for complying with all applicable statutory and regulatory requirements (e.g., Parts 5, 6, and 19). The requirements of parts 5, 6, and 19 apply at the acquisition planning stage prior to issuing the schedule solicitation and, generally, do not apply to orders and BPAs placed under resulting schedule contracts except see 8.404 and 8.405-5.

See FAR § 38.101(e). Moreover, as discussed above, FAR Part 10 only states that market research "should include" consideration of the "[s]ize and status of potential sources." See FAR § 10.002(b). Notwithstanding the apparent inconsistency between the language in 13 C.F.R. §§ 125.1 and 125.2 and the history of 13 C.F.R. § 125.2, as discussed below, ARC's protest still fails.

Regarding the requirement at 13 C.F.R. § 125.2(c)(2) that an agency must conduct market research to determine the type and extent of foreseeable small business participation in an acquisition, in the above-captioned bid protest, the parties have stipulated that the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet indicated whether a vendor was certified as a small business under certain NAICS Codes applicable to the SINs included in the 2018 RFQ. As the parties have stipulated, the December 13, 2017 spreadsheet identified:

SIN 653-1: NAICS Codes 531210 and 531190, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-4: NAICS Codes 531390, 531210 and 541511, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-5: NAICS Codes 531210 and 531190, with two businesses listed as small business certified: Choice Relocation Management and Sibcy Cline Relocation Services

SIN 653-7: NAICS Code 484210, with nine business listed as small business certified: American Relocation Connections, Choice Relocation Management, Reliance Relocation Services, Sibcy Cline Relocation Services, TRF Global Mobility, Life International Companies, Move Management Center, Relocation Management Worldwide, and Weleski Transfer.

The CBP had discretion to determine the extent of market research that must be conducted regarding a procurement under FAR Part 8. The information in the record before the court indicates that the CBP conducted sufficient market research to determine the type and extent of any potential small business participation under the SINs relevant

to the 2018 RFQ by obtaining research regarding the small business certifications of vendors under NAICS Codes associated with SINS 653-1, 653-4, 653-5, and 653-7 on Schedule 48 of the FSS from Ms. Spangler, GSA's "CO who oversees the relocation contracts" and "manages these contracts." See FAR § 10.002(b)(2)(i) (stating that market research may include "[c]ontacting knowledgeable individuals in Government and industry regarding market capabilities to meet requirements"). As indicated in Ms. Shaffer's December 5, 2017 email to CBP contracting personnel, Ms. Spangler "put together information that includes small business as it relates to these contracts and can provide this to you directly," which was provided to CBP in the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet. The CBP's rationale for issuing the 2018 RFQ as an unrestricted procurement also is documented in the undated First Market Research Report, which states:

> Further, based on information obtained through the GSA Contracting Officer in charge of Relocation Program, there was a not reasonable expectation that CBP would receive three small business proposals needed for maximum competition. Specifically, a number of small business [sic] were exiting the GSA Relocation program. The requirement is such the contractor would have to provide services across 4 SINs relevant to the acquisition, and the market research done did not show sufficient small businesses required to obtain at [sic] 2 to 3 proposals[.]

As noted by ARC, however, the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet did not list all of the applicable NAICS Codes under SINs 653-1, 653-4, 653-5, and 653-7. According to ARC, "reliance on these documents cannot be considered reasonable as they failed to reveal all relevant information regarding Schedule 48 and the relevant SINS." The December 13, 2017 spreadsheet, which was updated by GSA with additional NAICS Codes not included in the December 5, 2017 spreadsheet, omitted NAICS Code 484210 as an applicable NAICS Code under SIN 653-1, 653-4, and 653-5, as well as NAICS Code 541511 as an applicable NAICS Code under SINs 653-1 and 653-5. The December 13, 2017 spreadsheet, however, listed NAICS Code 484210 as a NAICS Code under SIN 653-7 and NAICS Code 541511 as a NAICS Code under SIN 653-4. All of the potential NAICS Codes that could have been used for the 2018 RFQ, which were the NAICS Codes 484210, 531190, 531210, 531210, and 541511, therefore, were included in the December 13, 2017 spreadsheet and were before the CBP when it determined that the applicable NAICS Code for the 2018 RFQ was NAICS Code 531210. According to the SBA's regulations:

> The contracting officer must assign a single NAICS code for each order issued against a Multiple Award Contract. When placing an order under a Multiple Award Contract with multiple NAICS codes, the contracting officer must assign the NAICS code and corresponding size standard that best describes the principle purpose of each order. In cases like the GSA Schedule, where an agency can issue an order against multiple SINs with different NAICS codes, the contracting officer must select the single NAICS code that best represents the acquisition.

13 C.F.R. § 121.402(c) (2018). Based on the NAICS Codes included in the December 5, 2017 and December 13, 2017 spreadsheets, CBP was aware that it could select from NAICS Codes 484210, 531190, 531210, 531210, or 541511 as the applicable NAICS Code for the 2018 RFQ. The undated first Market Research Report indicates that CBP determined that the NAICS Code applicable to the 2018 RFQ was NAICS Code 531210 because of "the higher estimated value of work to be performed under the NAICS relative to the other NAICS being utilized for this acquisition."

> ARC also asks:
>
> [I]f the Acquisition Plan for the 2017 RFQ was the acquisition plan for the 2018 RFQ as the Cross Motion suggests, how does the Government rationalize the Acquisition Plan's findings that "small business vendors from GSA Multiple Award Schedule (MAS) holders will be utilized for this acquisition" and that the proper NAICS Code was 484210 – Household Goods Moving, with its decisions to release the 2018 RFQ as unrestricted and to change the NAICS Code?

The administrative record indicates that the CBP performed sufficient acquisition planning and market research and considered the information obtained prior to selecting NAICS Code 531210 as the proper NAICS Code applicable to the 2018 RFQ and releasing the 2018 RFQ as an unrestricted procurement.

Moreover, to the extent ARC is challenging the merits of the CBP's decision to select NAICS Code 531210, rather than NAICS Code 484210, as the NAICS Code applicable to the 2018 RFQ, the regulation at 13 C.F.R. § 121.1103(b)(1) (2018) requires that an "appeal from a contracting officer's NAICS code or size standard designation must be served and filed within 10 calendar days after the issuance of the solicitation or amendment affecting the NAICS code or size standard" to the SBA's Office of Hearings and Appeals, which ARC did not do prior to filing its complaint in this court. See 13 C.F.R. § 121.1103(b)(1); see also 13 C.F.R. § 121.402(d) (2018) ("The NAICS code assigned to a procurement and its corresponding size standard is final unless timely appealed to SBA's Office of Hearings and Appeals . . . ."). An appeal to the SBA's Office of Hearings and Appeals "is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court." 13 C.F.R. § 121.1102 (2018). Therefore, ARC's failure to appeal the CBP's determination that NAICS Code 531210 applied to the 2018 RFQ prevents this court from reviewing the merits of the CBP's assignment of NAICS Code 531210 to the 2018 RFQ.[20] See Palladian Partners, Inc. v.

---

[20] ARC argues that the undated First Market Research Report, which was initially produced as part of the agency record in ARC's bid protest at the GAO, does "not constitute market research" because it "appears" that the undated First Market Research

United States, 783 F.3d 1243, 1255 (Fed. Cir. 2015) ("[I]f no party had appealed the contracting officer's NAICS code selection to OHA [Office of Hearings and Appeals], it would not have been reviewable in court."); see also Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 588 (2014) ("Because LBI failed to appeal the NAICS code or size standard to SBA within the time allotted, it may not seek review of the NAICS code or size determination in this proceeding.").

Regarding ARC's challenge to the CBP's release of the 2018 RFQ as an unrestricted procurement, as discussed above, under the NAICS Code applicable to the 2018 RFQ, NAICS Code 531210, the December 13, 2017 spreadsheet and that Sibcy Cline Relocation Services informed the GSA that Sibcy Cline Relocation would not be renewing its contract that was set to expire in March 2018 indicate that the only business certified as a small business under NAICS Code 531210 appeared to be Choice Relocation Services.[21] The CBP, therefore, rationally exercised its discretion when deciding to not set aside the 2018 RFQ for small businesses and to issue the 2018 RFQ

_____

Report was "created to provide some support to the Agency's otherwise wholly unsupported defenses to the subject Protest" and does not provide "reliable evidence to prove that the Agency performed the requisite market research **prior to** issuing the RFQ" on January 19, 2018. (emphasis in original). In the July 17, 2018 declaration signed by Mr. Ohene, Mr. Ohene indicates that the undated First Market Research Report was created in December 2017, but contained several errors, as discussed above. The portions of the undated First Market Research Report quoted by the court earlier in the opinion regarding the applicable NAICS Code for the 2018 RFQ were not impacted by the errors identified by Mr. Ohene. Additionally, in his November 28, 2017 email message to Ms. Reeves, Mr. Ohene states that "I will work on" a "Market Research" document, which indicates that Mr. Ohene intended to work on a document relating to market research in connection with CBP's upcoming procurement of employee relocation services. Although the First Market Research Report is undated, the court is not persuaded by plaintiff's speculative and unsupported argument that the First Market Research Report was created after the 2018 RFQ was issued on January 19, 2018. Moreover, the pertinent portions of the First Market Research Report summarizes the market research information from the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet, which were obtained from the GSA prior to the issuance of the 2018 RFQ on January 19, 2018. The First Market Research Report does contain information pertaining to the CBP's rationale for selecting NAICS Code 531210 as the applicable NAICS Code for the 2018 RFQ, which is not contained in the December 5, 2017 spreadsheet and December 13, 2017 spreadsheet. Regardless, the merits of whether CBP chose the proper NAICS Code for the 2018 RFQ is beyond the scope of this court's review because ARC failed to appeal the CBP's determination to the SBA.

[21] The court notes that, after the 2018 RFQ was issued on January 19, 2018 and after ARC filed its bid protest regarding the 2018 RFQ at the GAO on February 12, 2018, ARC did update its small business certification to indicate that ARC, in fact, was a small business under NAICS Code 531210.

as an unrestricted procurement. See FAR § 8.405-5 (stating that an agency may, at their discretion, set aside a blanket purchase agreement issued under the FSS).

As to ARC's assertion that the CBP violated 13 C.F.R. § 125.2(c)(3), which requires that an agency provide to the SBA a written statement "if the description of the requirement includes goods or services currently being performed by a small business and the magnitude of the quantity or estimated dollar value of the proposed procurement would render small business prime contract participation unlikely," the administrative record does not indicate that the CBP issued the 2018 RFQ as an unrestricted procurement because "the magnitude of the quantity or estimated dollar value" rendered small business participation unlikely. Rather, the administrative record indicates that the 2018 RFQ was issued as an unrestricted procurement because CBP determined NAICS Code 531210 to be the applicable NAICS Code for the 2018 RFQ, under which there was only one certified small business at the time the 2018 RFQ was issued. Thus, CBP arguably did not violate the SBA regulation at 13 C.F.R. § 125.2(c)(3) by failing to provide to the SBA a written statement.[22]

Finally, ARC argues that the CBP violated 13 C.F.R. § 125.2(c)(2), which states that an agency must consult with an SBA Procurement Center Representative and the agency's Small Business Specialist during the market research phase, and HSAM § 3019.501(c), which requires that proposed acquisitions exceeding the simplified acquisition threshold be reviewed by a Small Business Specialist. The parties have stipulated that CBP did not consult with the DHS Office of Small & Disadvantaged Business Utilization prior to issuing the 2018 RFQ. Mr. Bell's February 2, 2018 email message to CBP contracting personnel, in which Mr. Bell asks "what factor(s) determined an unrestricted acquisition strategy" for the 2018 RFQ, also indicates that CBP did not consult with the DHS Office of Small & Disadvantaged Business Utilization when conducting market research. The administrative record also does not indicate that CBP completed a DHS Small Business Utilization Form earlier than February 7, 2018, approximately two-and-a-half weeks after the 2018 RFQ was issued as an unrestricted procurement.

In the February 7, 2018 DHS Small Business Review Form, CBP, however, indicated that NAICS Code 531210 was the applicable NAICS Code for the 2018 RFQ "given the higher estimated value of work to be performed under the NAICS," and that, based on market research, the procurement was being issued as an unrestricted procurement because there was not a reasonable expectation that CBP "would receive two to three small business proposals needed for maximum competition." On February 9, 2018, a DHS Small Business Specialist concurred with CBP's decision, and, on February

---

[22] Even if CBP should have provided a written statement to the SBA under 13 C.F.R. § 125.2(c)(3), CBP's failure to do so would not have impacted CBP's procurement because there was only one small business under the NAICS Code applicable to the 2018 RFQ, NAICS Code 531210, and, given the dearth of certified small businesses under NAICS Code 531210, it would not have been appropriate for CBP to set aside the 2018 RFQ for small business offerors.

12, 2018, a SBA Procurement Center Representative concurred with CBP's decision to issue the 2018 RFQ as an unrestricted procurement under the FSS. Although CBP did not consult with the SBA representative or a Small Business Specialist prior to issuing the 2018 RFQ, ARC has not demonstrated that it was prejudiced by CBP's failure to do so because, regardless of whether CBP consulted with the SBA or a Small Business Specialist during the market research phase, there appears to have been only one certified small business under NAICS Code 531210 at the time the 2018 RFQ was issued, and, consequently, there would not have been an expectation of receiving at least three offers from small businesses. See FAR § 8.405-2(c)(3)(iii) (requiring that, when the value of a proposed order under the FSS exceeds the simplified acquisition threshold and requires a statement of work, the agency must provide the RFQ to as many contractors as practicable "to reasonably ensure that quotes will be received from at least three contractors that can fulfill the requirements"). Moreover, CBP had discretion to set aside the 2018 RFQ for small business under FAR § 8.405-5(a), and the administrative record indicates that CBP rationally exercised its discretion when issuing the 2018 RFQ as an unrestricted procurement, which CBP issued to Schedule 48 vendors, including ARC.

## CONCLUSION

ARC's motion for judgment on the administrative record is **DENIED**. Defendant's cross-motion for judgment on administrative record is **GRANTED**. ARC's request for a preliminary and permanent injunction is **DENIED**.[23] ARC's complaint in the above-captioned bid protest is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** in accordance with this opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[23] As noted above, during the July 9, 2018 conference, ARC stated that it was no longer seeking a temporary restraining order.